ROBERT RANKEN V. W. C. MCCALLUM ET AL.

Decided January 26, 1901.

**1.—Municipal Corporation—Succession—Indebtedness.**

A municipal corporation which succeeds another and embraces substantially the same territorial body of inhabitants becomes, by operation of law, responsible for the debts, such as sewerage bonds, of its predecessor, although such predecessor was only a de facto corporation, and was abolished by judicial decree because of the irregular manner of its organization.

**2.—Same—Commissioners Court—Mandamus—Taxation—City Bonds.**

Since the Constitution (article 5, section 18) limits the powers of the commissioners court to county business, article 616 of the Revised Statutes, empower-

ing it to levy and collect taxes to settle the indebtedness of a municipal corporation which has been abolished, is invalid. Following Electric Light Company v. Kenan, 88 Texas, 197.

Error from Mitchell. Tried below before Hon. Ben. Randalls, Special Judge.

*Thos. K. Skinker* and *A. H. Kirby,* for plaintiff in error.

*W. B. Crockett,* for defendants in error.

HUNTER, Associate Justice.—This suit was filed in the District Court of Mitchell County on the 30th day of September, 1897, by appellant against the Commissioners Court of said county, and against J. E. Hooper, the county judge, and A. J. Coe, J. W. Bird, R. H. Crump, and H. C. Landers, commissioners of and for precincts Nos. 1, 2, 3 and 4, respectively, in the order named, of Mitchell County, said named county judge and commissioners forming the present Commissioners Court of said county, praying for a peremptory writ of mandamus against said Commissioners Court, as a body, and against Hooper, Coe, Bird, and Crump as commissioners, compelling the said court, or said commissioners, to levy and collect a tax on the property situated within that portion of Mitchell County which once formed the incorporated city of Colorado, but now defunct, it having by a vote of the people surrendered its charter as is provided by articles 617b and 617c of our Revised Statutes.

The Commissioners Court in a body and each of said commissioners, answered by a general demurrer, which was sustained by the court, and the petition was dismissed; and from this judgment this appeal is taken.

The petition alleged, in effect: "That prior to the 3d day of July, 1883, the town of Colorado, in said Mitchell County, had been duly incorporated under the general statutes made and provided in that behalf; and that on that day, said town containing more than 1000 inhabitants, the county judge of Mitchell County made and entered on the minutes of the Commissioners Court of said county an order setting forth that the inhabitants of the town of Colorado were then and there and thereby incorporated into a city to be designated and known as "The City of Colorado," and that its territorial limits should be the same as the town. Said judge also made an order for an election for a mayor, a marshal, and five aldermen to be elected in said territory, which election was held in due form, and said officers were elected by the people, qualified and actually entered upon their respective duties as prescribed by the statute, and from July 3, 1883, to May 15, 1890, the said "The City of Colorado" exercised all the powers of an incorporated city of more than 1000 inhabitants within the territorial limits of said town. That on the 1st day of October, 1883, the said city of Colorado issued its bonds in due form to the amount of $6000, for the purpose of build-

ing sewers and draining the city. Said bonds were payable to bearer at the city treasurer's office in the city of Colorado, but interest coupons were payable at the National Bank of Commerce in the city of New York.

At the time of the issuance of said bonds due provisions were made for the payment of the interest and creation of a sinking fund, by an ordinance passed by the city council, in accordance with the requirements of the law; the bonds were afterwards placed upon the market, and before maturity thereof and before the maturity of any of the coupons sued on, and in due course of trade for a valuable consideration paid, the plaintiff became the owner and bearer thereof; that at the time said bonds were issued the taxable values of said city amounted to $1,000,000; that the proceeds of said bonds were used by said city in constructing a drainage and sewerage system for and in said city. In August, 1889, quo warranto proceedings were instituted by the State to declare the city incorporation null and void, and it resulted in a judgment annulling the city corporation and declaring it void, and this judgment was affirmed by the Supreme Court of Texas, who declared that the town of Colorado, as organized in 1882, was still in existence, with its original territorial limits.

All the lands which were ever actually occupied and inhabited lay within the limits of this original town, and all the streets and public buildings, as well as the entire system of drainage and sewerage built with the proceeds of the bonds, were within the same territory. After the affirmance of this judgment, to wit, on the 13th of May, 1890, an election was held by the people for the town officers, and they were elected and qualified and entered upon the duties of their respective offices, and the town begun business again under its old charter and exercising jurisdiction over the same territory. This continued until the 2d of July, 1891, when, by a two-thirds vote of the town council, the town surrendered its charter as such, and accepted in lieu thereof the provisions of title 17 of the Revised Statutes of Texas, and thereupon became duly incorporated as the city of Colorado, embracing the same territory as the town.

When the town revived its municipal government in 1890 it assumed control and ownership of all the property which had belonged to the city created in 1883, and thereafter continued to control and manage the same until the new city was created in 1891, when the latter assumed control and ownership of all the property of the town, and retained the same until the 7th day of August, 1895. On that day the county judge, by an order entered of record, declared the city corporation abolished in pursuance of a vote of the inhabitants taken on the 5th day of the same month, as provided by chapter 109 of the Acts of 1895. Thereupon the city ceased to exist, and no reincorporation has ever taken place. The Commissioners Court of Mitchell County forthwith took charge of all the property of the city of Colorado, and assumed control and management of its unsettled affairs, but has never paid

or made any provision for the payment of plaintiff's bonds, but, though requested, has refused to do so.

Plaintiff claims that the town of Colorado was the successor in law of the first city of Colorado; that the second city was the successor of the town; that each corporation in turn became liable for the debts of its predecessor, including plaintiff's bonds; that since the abolition of the last city, plaintiff has had no remedy against any person, except by mandamus proceedings against the Commissioners Court and the members thereof, to compel them to levy the tax on the taxable property within the limits of the last city, the proceeds of which should be used to pay the plaintiff's bonds.

The first proposition of appellant is: "The last city of Colorado was responsible for the bonds issued by the de facto city of 1883, and when the last city was abolished in 1895, the bonds remained and constituted a continuing liability."

It seems to be well settled that when one municipal corporation is succeeded by another, embracing substantially the same territorial body of inhabitants, the successor, by operation of law, becomes responsible for all the debts of the predecessor. This is the rule, it seems, whether the first corporation is abolished by voluntary surrender of its charter, by legislative repeal, by judicial decree, by merger, or by annexation. Broughton v. Pensacola, 93 U. S., 266; Mt. Pleasant v. Beckwith, 100 U. S., 514; Mobile v. Watson, 116 U. S., 289; Riley v. Garfield Township, 54 Kan., 463; School District v. State, 29 Kan., 57; Ruohs v. Athens, 91 Tenn., 20; Hill v. Kahoka, 35 Fed. Rep., 32; Brewis v. Duluth, 13 Fed. Rep., 334; Laird v. De Soto, 22 Fed. Rep., 421; Devereaux v. Brownsville, 29 Fed. Rep., 742; O'Connor v. Memphis, 6 Lea., 730; Amy v. Selma, 77 Ala., 103; Schriber v. Langlale, 66 Wis., 629; People v. Board of Supervisors, 94 N. Y., 263; Ross v. Wimberly, 60 Miss., 345; 1 Dill. Mun. Corp., 4 ed., secs. 169-174; Tied. on Mun. Corp., secs. 42, 43.

In the case of Shapleigh v. San Angelo, 167 United States, 640, Justice Shiras, for the Supreme Court of the United States, said: "The conclusions reached by this court may be thus expressed: The State's plenary power over its municipal corporations to change their organization, to modify their method of internal government, or to abolish them altogether, is not restricted by contracts entered into by the municipality with its creditors or with private parties. An absolute repeal of a municipal charter is therefore effectual so far as it abolishes the old corporate organization; but when the same or substantially the same inhabitants are erected into a new corporation, whether with extended or restricted territorial limits, such new corporation is treated as in law the successor of the old one, entitled to its property rights and subject to its liabilities"—citing 1 Dillon, Municipal Corporations, fourth edition, section 172.

We conclude, then, that the city corporation of 1883, which issued the bonds, was a de facto corporation, and that the bonds were valid

obligations of that corporation, and that the town and succeeding city corporations must, in law, be held to have assumed their payment inasmuch as they succeeded to all the property rights of said corporations. White v. City of Quanah, 27 S. W. Rep., 839, and authorities there cited by Justice Head; Shapleigh v. San Angelo, 167 U. S., 646, 42 L. Ed., 310; Brownwood v. Noel, 43 S. W. Rep., 890.

This case is distinguishable from that of Norton v. Shelby County, 118 United States, 425, 30 Lawyers' Edition, 178, in that the persons issuing the bonds in the Shelby County case were held to be neither de jure nor de facto officers, there being under the Constitution of Tennessee no such office to fill; but in this case the municipal corporation which issued the bonds, while not a de jure corporation, because it was not organized according to law, yet, there being a valid statute authorizing the organization of such a corporation, the officers elected by the people acting in that capacity, and who were actually exercising the functions of officers of such corporation, would be de facto officers, and their acts in issuing the bonds would be acts of the de facto corporation, and would be valid; for none can question the validity of such a corporation except the State. Graham v. Greenville, 67 Texas, 62.

The next question is whether the Commissioners Court can be required to levy a tax on the property contained in the territory lately occupied by the city of Colorado, to pay the bonds? Our constitution provides: "The county commissioners so chosen, with the county judge as presiding officer, shall compose the county commissioners court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of this state, or as may be hereafter prescribed." Art. 5, sec. 18.

Our statute (articles 615, 617b, 617c) provides a way for towns and cities to abolish their corporate existence, and articles 616 provides that where the corporation is thus abolished, or where any de facto corporation shall be declared void by any court, etc., "all the property belonging thereto shall be turned over to the county treasurer of the county, and the commissioners court of the county shall provide for the sale and disposition of the same, and for the settlement of the debts due by the corporation, and shall carry out and enforce all legal contracts of such corporation, and for this purpose shall have power to levy and collect a tax from the inhabitants of said town or village in the same manner as the said corporation would be entitled to under the provisions of this chapter," etc.

This article also applies, if valid at all, to city corporations such as we have under consideration, though only the terms "town. or village" are used above, because the articles 617b and 617c, referred to in the article, relate to city corporations.

From these articles of the statute it seems to us the Legislature intended to provide for just such a condition of affairs as is shown in plaintiff's petition, and give a simple and adequate remedy to creditors of the defunct corporation for the collection of their debts. But in

Electric Light Company v. Kenan, 88 Texas, 197, our Supreme Court held that article 616 was in contravention of the section of the Constitution quoted, in that it attempted to confer jurisdiction on the commissioners court in matters which were not "county business." While, as stated, we easily distinguished the case at bar from the case of Norton v. Shelby County on the question of the validity of the bonds, we are unable to distinguish it from the Texas case above cited on the question of the power or duty of the commissioners court to levy the tax to pay the bonds. Appellant's counsel, both in oral argument and in a very able brief, insist that the construction placed by our Supreme Court upon the terms "county business," as used in the Constitution, is too restrictive, and urge us to reconsider the question, because, as they insist, the question was neither argued nor briefed by counsel on either side before that court in the Kenan case, and hence the court was deprived of the advantages which thorough research and argument of counsel afford; and they cite many authorities both under our statutes and decisions and those of other States. But, while we would be inclined to follow the views expressed by counsel were it not for this decision, we do not feel justified in ignoring it, as it decides the very question at issue here, and one, too, which was certified from this court.

Feeling constrained by the decision in the case named, we order that the judgment in this case be affirmed.

*Affirmed.*

Writ of error refused.