RINGLING v. CITY OF HEMPSTEAD.

(Circuit Court of Appeals, Fifth Circuit. February 6, 1911.)

No. 2,240.

1. MUNICIPAL CORPORATIONS (§ 51*)—DISSOLUTION—PROCEEDINGS.

Since a municipal corporation can be created only by act of the Legislature, general or special, such a corporation, when created, can only be dissolved by legislative action.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. § 51.*]

2. COURTS (§ 366*)—FEDERAL COURTS—STATE CONSTITUTIONAL PROVISIONS—CONSTRUCTION.

The Supreme Court of Texas having determined that the Texas Constitution limited the duties of county commissioners exclusively to county business, and that Rev. St. Tex. 1895, art. 616 (Acts 24th Leg. c. 109, § 4), providing that, on the dissolution of a municipal corporation, its affairs, the payment of its debts, and the levy and collection of taxes should be managed by the county commissioners, and that this was not county business, and that the statute was therefore unconstitutional, such determination would be followed in the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

3. STATUTES (§ 64*)—PARTIAL INVALIDITY—DISSOLUTION OF MUNICIPAL CORPORATIONS.

Rev. St. Tex. 1895, art. 616 (Acts 24th Leg. c. 109, § 4), relating to the dissolution of municipal corporations, in so far as it provided for the settlement of its affairs, the payment of debts, and levy of taxes by the commissioners of the county, having been held unconstitutional, the whole act thereby became void, leaving no legislation in force at the time under which municipal corporations could be dissolved, since, without a pro-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vision for payment of the debts of a dissolved corporation, there could be no constitutional method of disincorporation, as the result of such an incomplete system would be to impair the obligations of the corporation's contracts.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66; Dec. Dig. § 64.*]

**4.** MUNICIPAL CORPORATIONS (§ 51*)—DISSOLUTION—UNCONSTITUTIONAL STATUTE—SUBSEQUENT STATUTE.

Where proceedings were had under an unconstitutional statute to disincorporate a city, they were a mere nullity, and were not revitalized or in any manner affected by the passage, six years thereafter, of Acts 29th Leg. Tex. c. 134, providing a method for settling the affairs and paying the debts of a dissolved municipal corporation through a receivership in the District Court.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 51.*]

**5.** MUNICIPAL CORPORATIONS (§ 51*)—DISSOLUTION—CORPORATE POWERS—NONUSER.

In the absence of controlling legislation, nonuser of corporate powers does not effect a dissolution of a municipal corporation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 138; Dec. Dig. § 51.*]

**6.** MUNICIPAL CORPORATIONS (§ 51*)—DISSOLUTION—CORPORATE POWERS—NONUSER.

Where a city originally incorporated under a general law, and continued by special law thereafter surrendered its special charter, and accepted in lieu thereof, pursuant to legislative authority, the provisions of the general incorporation law under which it was acting when it took ineffectual steps for dissolution, subsequent nonuser of corporate powers did not work a dissolution, since Acts 25th Leg. Tex. c. 114, providing for the dissolution of municipal corporations by nonuser, is limited to towns and cities incorporated under special acts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 138; Dec. Dig. § 51.*]

**7.** MUNICIPAL CORPORATIONS (§ 51*)—DISSOLUTION—OFFICERS—"VACANCY."

Const. Tex. art. 16, § 17, provides that all officers within the state shall continue to perform the duties of their offices until their successors shall be duly qualified, and Rev. St. Tex. 1895, art. 387, after providing for the election of municipal officers, including mayor, aldermen, and secretary, declares that they shall be elected as provided and hold office for two years, "and until the election and qualification of their successors." Held, that a municipal corporation, having failed to elect municipal officers, did not create vacancies within Acts 25th Leg. Tex. c. 114, providing for dissolution of municipal corporations for nonuser of corporate powers, where the offices had been vacant for a period of 10 years or more.

[Ed. Note.— For other cases, see Municipal Corporations, Cent. Dig. § 138; Dec. Dig. § 51.*

For other definitions, see Words and Phrases, vol. 8, pp. 7254–7259; vol. 8, p. 7826.]

**8.** MUNICIPAL CORPORATIONS (§ 1029*)—INEFFECTUAL DISSOLUTION—ACTIONS—SERVICE.

Under Const. Tex. art. 16, § 17, and Rev. St. Tex. 1895, art. 387, providing that the officers of municipal corporations shall hold their offices until the election and qualification of their successors, where a municipal corporation attempted disincorporation under an unconstitutional statute and thereafter no further officers were elected, jurisdiction could be properly obtained of the corporation in an action against it by service on the

persons who were the proper officers at the time of such attempted dis-incorporation.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 1029.*]

9. MUNICIPAL CORPORATIONS (§ 1030*)—ACTIONS—JURISDICTION—APPEARANCE.

Where a municipal corporation had ineffectually attempted to disincorporate, and in a subsequent action against it appeared through its attorney and filed a plea of limitations, such appearance was sufficient to confer jurisdiction over it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2200; Dec. Dig. § 1030.*]

In Error to the Circuit Court of the United States for the Southern District of Texas.

Action by Philip Ringling against the City of Hempstead. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

This was an action commenced by the plaintiff in error in the Circuit Court of the United States for the Southern District of Texas against the defendant in error, a municipal corporation, to recover an amount alleged to be due on certain of its bonds and coupons. There was an appearance in the court below of certain officers of the defendant, who filed an answer, setting up the disincorporation of the defendant corporation, prior to the institution of the suit, and praying the dismissal of the case for that reason, and, in the event the court took jurisdiction of the case, asking that its plea of the statute of limitations as to certain of the coupons be considered by the court. A jury trial was waived by stipulation of the parties, filed in the cause, and a trial without jury, resulting in a judgment of dismissal by the court, was had, to review which this writ of error was taken. There was no appearance in this court for the defendant in error.

The city of Hempstead was incorporated originally under the general laws of Texas. In 1871 its corporate capacity was continued by a special act of the Legislature of Texas. Sp. Laws 1871, c. 7; 6 Gammil's Laws, 1153. It proceeded under this special charter until 1878, when, pursuant to an act of the Legislature of Texas (chapter 100, Laws 1875, 8 Gammil's Laws, 485), it accepted incorporation under the general law of Texas in lieu of its special charter. Again, on April 7, 1884, it adopted the provision of the general law in lieu of its special charter. The Legislature of Texas in 1891 (chapter 25, General Laws 1891; article 386, R. S. 1895) ratified the irregular attempts, previously made, of municipal corporations to accept the general law in lieu of special charters. This seems to be the legislative history of defendant up to the time of its attempted disincorporation. The bonds sued on were issued by defendant on November 1, 1889, pursuant to an ordinance of October 8, 1889, and were purchased by the plaintiff in the open market and at a premium on November 11, 1889, and the proceeds of the sale went into the treasury of the defendant. No irregularity existed in the issue or negotiation of the bonds. No interest was paid on the bonds subsequent to November 1, 1897, and at the time the suit was brought both the principal and interest were past due. On February 7, 1899, a special election was held, purporting to be had under article 615 et seq. of the Revised Statutes of Texas for the disincorporation of the defendant, and, the returns of the election showing that a majority had voted for disincorporation, the county judge on February 13, 1899, made an order abolishing the corporation, except as to its right to levy and collect taxes for school purposes and to pay the outstanding indebtedness of the corporation. Upon these facts the court below held that the disincorporation of defendant was valid, and dismissed the case for want of jurisdiction.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Locke & Locke, for plaintiff in error.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). The judgment of dismissal presents for decision but the single issue: Whether, prior to the bringing of the suit, the defendant corporation had been dissolved either by the recited proceedings of disincorporation or by nonuser of its corporate powers for a period of 10 years.

[1] 1. It is well settled that a municipal corporation can only be dissolved by legislative action. 1 Dillon on Municipal Corporations (5th Ed.) § 332; State v. Dunson, 71 Tex. 65, 9 S. W. 103; Largen v. State, 76 Tex. 323, 13 S. W. 161; Harness v. State, 76 Tex. 566, 13 S. W. 535; Ex parte Cross, 44 Tex. Cr. R. 376, 71 S. W. 289. Judge Dillon's statement of the rule is as follows:

"Since all of our charters of incorporation come from the Legislature, a municipal corporation cannot dissolve itself by a surrender of its franchise. The state creates such corporations for public ends, and they will and must continue until the Legislature annuls or destroys them, or authorizes it to be done. If there could be such a thing as a surrender, it would, from necessity, have to be made to the Legislature, and its acceptance would have to be manifested by appropriate legislative action."

In State v. Dunson, supra, the court said:

"The inhabitants of a given territory have no inherent power to create therein a municipal corporation. This can be done only by a special act of the Legislature, or by compliance with the general law providing a manner in which the inhabitants may give life to such a corporation. The inhabitants of a municipal corporation are as powerless to dissolve it, unless this be done in the mode prescribed by law, as they are to create such a corporation in a mode not prescribed by law."

The proceedings of disincorporation were had in 1899. At that time the legislation in Texas authorizing the disincorporation of towns and villages was comprised in articles 615, 616, and 617 of the Revised Statutes of 1895, as amended by the acts of 1897 (General Laws of 1897, cc. 61, 131). At that time the legislation relating to the disincorporation of cities and towns was comprised in an act of the Legislature of Texas of 1895, as amended in 1899.

[2] Each statutory system provided a method for the settlement of the affairs of the dissolved corporation, the payment of its debts, and the levy and collection of taxes for that purpose through the board of county commissioners of the county in which the corporation was located. Article 616, R. S.; section 4 of the act of 1895 (Acts 24th Leg. c. 109). The provision that was made by the Legislature for the winding up of the affairs of dissolved cities, towns, and villages by the commissioners' courts was declared unconstitutional by the Supreme Court of Texas because of the fact that the Texas Constitution limited the duties of county commissioners exclusively to county business, and the delegated duties with reference to dissolved municipal corporations were held not to constitute county business. Vapor Electric Light Co. v. Keenan, 88 Tex. 197, 30 S. W. 868;

Ranken v. McCallum, 25 Tex. Civ. App. 83, 60 S. W. 975. This construction of the Texas Constitution and statute will be followed by this court. Norton v. Shelby County, 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178.

[3] The result of these decisions was to leave a system of disincorporation as to cities, towns, and villages which made no provision for the winding up of their affairs and the payment of their debts. Without a provision for the payment of the debts of dissolved corporations, there could be no constitutional method of disincorporation. The result of such an incomplete system of disincorporation would be to impair the obligation of the contracts of the corporation by destroying the remedy for their enforcement or collection. Mt. Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699; Shapleigh v. San Angelo, 167 U. S. 646, 17 Sup. Ct. 957, 42 L. Ed. 310; Morris & Cummings v. State, 62 Tex. 728.

In view of the construction given the statutes by the Supreme Court of Texas, it seems clear that both systems provided by the statutes must fall in their entirety. The legislative history, relating to the dissolution of municipal corporations in Texas, indicates that the Legislature has invariably provided for the payment of the debts of the dissolved corporation in each instance in which it has established such a system. This is persuasive that it would not have enacted the disincorporation legislation in question independently of the provision for taking care of the corporate indebtedness. This is also made plain from the fact that promptly upon the method of settlement actually provided being declared unconstitutional it provided in 1905 another to take its place. It may also be assumed that the Legislature of Texas would not have enacted legislation which it knew, in the absence of the debt settlement provision, would encounter the provision of the federal Constitution against state legislative impairment of the obligation of contracts. Even if the Legislature can be considered as having intended to enact such an incomplete system, it could not stand against this constitutional objection. So, whatever conclusion may be arrived at as to the intention of the Texas Legislature, it is clear that the entire disincorporation system in each instance must fall by reason of the declared unconstitutionality of the settlement provision; and the result is that in 1899, when the attempt was made to disincorporate the city of Hempstead, there was no valid legislation in Texas under and by which a city, town, or village could be disincorporated. Valid legislation is essential to disincorporation. This conclusion, if correct, makes it unnecessary to determine whether or not the attempted disincorporation proceedings were taken under the appropriate statute for a city such as Hempstead then was.

[4] The Legislature of Texas by an act passed in 1905 provided a method for settling the affairs and paying the debts of dissolved municipal corporations through a receivership in the District Court. General Laws of Texas 1905, p. 325. The act made the method applicable to theretofore dissolved corporations, if applied for within two years of the passage of the act. The question presents itself as

to the effect of this subsequent legislation upon the prior invalid disincorporation proceedings, taken by Hempstead in 1899 under an unconstitutional law. The court below held that it operated to ratify and give vitality to the void proceedings.

Mere irregularities in legal or quasi legal proceedings can be cured by subsequent legislation. What could have been done with legal authority, but was not, can be ratified by subsequent legislation. If, however, the tribunal acting had no authority in law to act at all in the premises, then its attempted action cannot be validated by subsequent legislation. In this case the only authority claimed for the attempted disincorporation proceedings was an unconstitutional statute. It was therefore done without legislative authority, when legislative authority was indispensable. An unconstitutional law is null and void, and proceedings had under it afford no basis for subsequent ratification or retroactive validation. Justice Field, in the case of Norton v. Shelby County, 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178, said:

"An unconstitutional law is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

The proceedings under which Hempstead was attempted to be disincorporated in 1899 were without authority of law and void, and could not have been retroactively validated by express legislation, much less by implication from the passage of a general act, the effect of which was to supply a necessary step in the original disincorporation system, made necessary by the court's elimination from the system of the plan for which it was substituted. It was not possible for the Legislature to revitalize void proceedings had six years before the supplementary legislation was enacted. Ex parte Bockhorn (Tex.) 138 S. W. 706; Seneca Mining Co. v. Secretary of State, 82 Mich. 573, 47 N. W. 25, 9 L. R. A. 770; State v. Tufly, 20 Nev. 427, 22 Pac. 1054, 19 Am. St. Rep. 374; Norton v. Shelby County, 118 U. S. 443, 6 Sup. Ct. 1121, 30 L. Ed. 178; Cooley on Statutory Limitations (7th Ed.) page 259.

The disincorporation proceedings being without the support of valid legislation and legislation being essential to their validity, the city of Hempstead retained its corporate capacity notwithstanding them.

[5] 2. In the absence of controlling legislation, nonuser of corporate powers does not effect a dissolution of a municipal corporation. The rule is thus expressed in Dillon on Municipal Corporations:

"In short, unless otherwise specially provided by the Legislature, the nature and constitution of our municipal corporations, as well as the purposes they are created to subserve, are such that they can, in the author's judgment, only be dissolved by the Legislature, or pursuant to legislative enactment. They may become inert or dormant, or their functions may be suspended, for want of officers or inhabitants; but dissolved, when created by an act of Legislature, and, once in existence, they cannot be, by reason of any default or abuse of the powers conferred, either on the part of the officers or inhabitants of the incorporated place. As they can exist only by legislative sanction, so they cannot be dissolved or cease to exist except by legislative consent or pursuant to legislative provision." Dillon on Municipal Corporations (5th Ed.) § 333; State v. Dunson, 71 Tex. 65,

9 S. W. 103; Buford v. State, 72 Tex. 182, 10 S. W. 401; Largen v. State, 76 Tex. 323, 13 S. W. 161.

[6] The only legislation in Texas providing for the dissolution of municipal corporations by nonuser of its corporate powers is contained in chapter 114, General Laws 1897, and is limited in its operation to towns and cities incorporated under special acts of the Legislature. The history of the city of Hempstead, as appears from the statement of this case, shows that it was originally incorporated under a general law, that afterwards its incorporation was continued by a special law, and, still later, it surrendered its special charter and accepted in lieu thereof, pursuant to legislative authority, the provisions of the general incorporation law of Texas, under which it was acting when dissolved. For this reason, the Texas nonuser statute of 1897 seems inapplicable.

[7] Again, the Texas statute of nonuser declares a forfeiture only in cases "where such town or city has been chartered by special act of the Legislature, and said town or city contains more than two thousand or less than five thousand inhabitants, and the offices have been vacant for a period of ten years or more." Section 17 of article 16 of the Texas Constitution provides that:

"All officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified."

Article 387 of the Revised Statutes of Texas, 1895, after providing for the election of municipal officers, including mayor, aldermen, and secretary, further provides as follows:

"The above-named officers shall be elected by the qualified electors of said city, as hereinafter provided for, shall hold their offices for two years and until the election and qualification of their successors."

In view of those provisions, mere failure to elect municipal officers does not create vacancies within the meaning of the nonuser statute, since the incumbents hold over until their successors are elected and qualified.

If it be conceded that the charter of Hempstead became subject to forfeiture in February, 1909, for nonuser under this statute, yet the statute provides no method of winding up the affairs of the corporation and paying its debts, and the forfeiture could only be declared and made effectual in a judicial proceeding in which the rights of creditors were also cared for and the affairs of the corporation finally settled up.

[8] 3. A supplemental question relates to the sufficiency of service. Service was obtained upon the officers who were holding office at the time of the attempted disincorporation of the city. If the corporation was not abolished by the attempted disincorporation, these officers hold over until the election and qualification of their successors. They could not, under the constitutional and statutory provisions of Texas, by ceasing to perform the functions of their offices, divest themselves of their official character and responsibility. They were, therefore, officers at the time of the service upon them, and were of a kind authorized to receive service for the corporation under the state stat-

utes. Service upon them, therefore, was sufficient to bring the defendant into court.

[9] If the corporation was not dissolved, it is in court, independently of the service, by its appearance in the cause through its attorney and the plea of the statute of limitations filed in its name by him.

Our views, as expressed, require the reversal of the judgment of dismissal, and the remanding of the cause for further proceedings in the District Court.