**EIDELBACH et al. v. DAVIS et al.**

No. 2922.

Court of Civil Appeals of Texas. Beaumont.

Nov. 13, 1936.

Rehearing Denied Dec. 2, 1936.

Jules Damiani, of Galveston, J. S. Jackson, of Alvin, E. I. Horowitz, of Galveston, and A. E. Amerman, of Houston, for appellants.

Armstrong, Cranford, Barker & Bedford, of Galveston, for appellees.

COMBS, Justice.

This suit was appealed from the district court of Galveston county to the Galveston Court of Civil Appeals and is before us on transfer by the Supreme Court.

Mark Eidelbach, Hal Biggers, and Ross Biggers, as plaintiffs, filed the suit against F. A. Horton, setting up that they were owners of property in the San Leon townsite in Galveston county, and that the defendant Horton had erected a storehouse in front of lots 25 and 26 of block 22 of the townsite, within a parkway designated as such upon the plat of the townsite, and they prayed for a mandatory injunction requiring Horton to remove the store from the parkway. Horton answered and filed a cross-action charging the plaintiffs with having obstructed the parkway by erecting thereon some twenty camp houses in front of block 21. Before the trial the appellees J. I. Younger and R. E. Davis intervened, setting up that they were property owners in the townsite, and complaining that both the plaintiffs and the defendants were violating their rights and the rights of the public, the one by erecting the store in the parkway and the others in erecting the camp houses. Upon the trial the plaintiffs Eidelbach et al. and the defendant Horton dismissed their petition and cross-action and defended against the suit of the interveners. The trial court, after having heard the evidence, rendered judgment in favor of the interveners, the appellees here, ordering by mandatory injunction that the obstructions of the street and parkway be abated and the appellants perpetually enjoined from erecting thereon any structures or buildings or making exclusive use of the street and parkway, which were found to be dedicated to public use.

Certain findings of fact filed by the trial court which serve to show the basic facts are as follows:

"In April, 1911, Eagle Land Company of Houston, as owner, platted and subdivided the town of San Leon out of a portion of the Amos Edwards League in Galveston County, Texas. Said town site is located on the shores of Galveston and Trinity Bays, having a frontage on the east on Galveston Bay of approximately 9,300 feet and a frontage on Trinity Bay on the north of approximately 6,900 feet. The town of San Leon is not now and never has been incorporated.

"On April 29, 1911, Eagle Land Company filed for record in the Map Records of Galveston County a map of said townsite. This map shows said town site to have been subdivided into approximately 220 blocks, the majority of which contain 48 lots each. The map shows streets running north and south between each tier of lots and avenues running east and west through each tier of lots, which said avenues extend to and intersect the Parkway and First Street hereinafter referred to.

"The map shows a 'Parkway' (which the evidence shows to have been laid out with a width of approximately 150 feet) commencing on the shore of Galveston Bay at Avenue 'O', which is the southern boundary of that portion of the town site, facing Galveston Bay and running north along the shore of Galveston Bay to what is known as 'Eagle Point,' same being the northeast corner of said town site, which said Parkway separates the town site from the shore of Galveston Bay. The map also shows a street known as 'First Street,' abutting the Parkway on the west, commencing at the south line of Block 64 and running to the northeast corner of Block 21, a distance of

four blocks; in other words, from the northeast corner of Block 21, which is the northeast corner of the townsite, south to the south line of Block 64 the town site is separated from the shore of Galveston Bay by, first First Street and, Second, the Parkway. From the south line of Block 64 to the southern boundary of the town site the Parkway is all that separates the town site from Galveston Bay. The Parkway and First Street from the south line of Block 64 to the north line of Block 21 are one open stretch of land. Block 21–a is what is known as 'Eagle Point' and is situated on a point projecting into Galveston Bay across the Parkway and opposite the northeast corner of said townsite proper, or, in other words, opposite the northeast corner of Block 21.

"The map of the town of San Leon, as filed for record in the Map Records of Galveston County, contains the following conditions and covenants:

" 'The State of Texas
" 'County of Harris.

" 'Know All Men By These Presents: That Eagle Land Company, a corporation chartered under the laws of the State of Texas and domiciled in the City of Houston, Harris County, Texas, being the owner of the land shown on this plat, does hereby subdivide all of the same into Blocks, Lots and Streets, Parkways, Parks and Reserved Land according to this plat, and does hereby dedicate the Streets shown hereon to the public forever for purposes of travel thereon; this dedication, however, being hereby made expressly subject to the following reservations, modifications and conditions, to-wit:

" '1. This Company hereby retains the exclusive right to the use of any or all of said streets for the purpose of laying thereon street car and railroad lines and gas, electric, water and all other similar public utilities;

" '2. Any purchaser or subsequent owner of any bay-front lot shown on this plat, except those lots facing Dickinson Bay, shall have the right to build a bath-house or boathouse, but for private use only, in front of such lot, but shall not have the right to sell or to give such privilege to another except by the written consent of this Company;

" '3. At the end of any of said streets or in front of any property then owned by it, this Company hereby specially reserves the right to build wharves, public or private bath-houses, boathouses or any other kind of building whatsoever; and

" '4. The Parks and Parkways shown on this map are hereby expressly reserved to this Company, except that the public are hereby granted the right forever to enter upon and to use same for purposes of pleasure and recreation.

" 'In witness whereof, the Eagle Land Company has caused this plat to be signed by its president and attested by its corporate seal and secretary, this 27th day of April, A. D. 1911.

" 'Eagle Land Company
" '[Signed]   Joe H. Eagle
" 'President
" 'Attest:
" '[Signed]   J. W. Hucker
" 'Secretary.'

"The conditions were reiterated by a declaration filed in the Deed Records of Galveston County by Eagle Land Company on April 28, 1911.

"Joe H. Eagle, of Houston, owned the land in question and formed the Eagle Land Company and was its president and sole owner. The Eagle Land Company was dissolved and the property transferred back to Mr. Eagle, who, in turn, formed the San Leon Company, of which he was the sole owner. This Company was also dissolved and the property again transferred to Mr. Eagle. These mutations occurred all prior to 1920."

The court further found, in substance, that during the early years of the townsite an intensive sales compaign was conducted and more than 4,000 lots were sold to persons throughout the United States, according to the map or plat of San Leon; that from the laying out of said townsite up to the present time the lots and blocks abutting the parkway and First street have been considered the more desirable property and have brought a higher price than interior lots, for the reason that "it was contemplated and impliedly represented there would never be permitted an obstruction between said lots and the bathing shore except bathing piers and boat houses on the shore line proper"; that on March 12, 1925, which was several years after the interveners and many other lot purchasers had purchased their lots, the commissioners' court of Galveston county, at the instance of Eagle, authorized Eagle to rescind the dedication of the parkway and First street theretofore made by Eagle Land Company in April, 1911, from the south line of block 21 around Eagle Point to the west line of block 21, and to convert block 21 and 21a

and the parkway and First street, lying between and abutting said blocks, into acreage. It is also shown that Eagle filed an instrument of record in Galveston county purporting to rescind the dedication of the street and parkway as authorized by the order of the commissioners' court. Horton and the Biggers hold under mesne conveyances from Eagle, and the store buildings, camp houses, etc., sought to be abated by this suit are situated on the portion of the street and parkway, the dedication of which was sought to be rescinded by Eagle as above mentioned. The court found as a fact that Horton and the Biggers, since the year 1931, have appropriated all that portion of First street and of the parkway lying north of the south line of block 21 to their own use and benefit, and asserted ownership thereof, and have excluded all persons from going upon said street and parkway, except at their permission and at their pleasure. The court's finding that the obstruction began in 1931 was evidently made by mistake, as the evidence and the pleadings of the parties show that the camp houses erected by Biggers were erected in the latter part of 1929 and the early part of 1930. Otherwise the findings are fully supported by the record. The court further found that the presence of the structures complained of work special injury and damage to the interveners; and, further, that it was the intention of the Eagle Land Company and Joe H. Eagle in laying out the townsite and dedicating the parkway to the public for the purposes of pleasure and recreation that said parkway should never be obstructed by buildings or structures of any kind; and, further, that the reservation in the dedication of the plat reserving to the dedicator the right to build wharves, public or private bathhouses, boathouses, etc., at the ends of streets, was intended to mean only that such structures could be built on the shore line of Galveston Bay east of the parkway, and was not intended to reserve the right to build such structures upon the parkway proper or on the street. These findings also are supported by the evidence.

■ The trial court did not err in holding that the parkway had been dedicated to public use for the purpose of pleasure and recreation by the filing of the plat and dedication and the sale of lots according to the plat so as to preclude the dedicator and his vendees, the defendants, from erecting and maintaining thereon camp houses and other structures for their own private use and profit. Lamar County v. Clements, 49 Tex. 347; Sanborn v. City of Amarillo, 42 Tex.Civ.App. 115, 93 S.W. 473; Oswald v. Grenet, 22 Tex. 94, 102; County of Harris v. Taylor, 58 Tex. 690; Clement v. City of Paris, 107 Tex. 200, 175 S.W. 672.

■ Nor do we think there is any merit in appellants' contention that the reservation in paragraph 3 above set out, which reserved to the dedicator the right to build "wharves, public or private bath houses, boat houses or other kind of buildings whatever" at the end of streets, was a specific reservation of the right to use that portion of the parkway at the end of the streets which abutted upon it. We think the trial court correctly concluded that such reservation did not reserve, and was not intended by the dedicator to reserve, the right to build upon or obstruct the parkway, but was intended to reserve only the right to build the structures referred to on the shore line of Galveston Bay, along the east side of the parkway. The structures specifically named are such only as would ordinarily be constructed at the edge of the bay shore or to extend out into the bay. The reservation was evidently intended to secure to bay shore lot owners the right to use the bay shore in front of their respective lots for the purposes named.

■ We also overrule appellants' contention that they have not excluded the interveners and the public from the use of the parkway. Their contention in that regard seems to be that they are using only a part of the parkway for their bathhouses, stores, etc., and that the public and the interveners have free access to the premises surrounding them. It cannot be questioned that the appellants have completely excluded the interveners and the public generally from that portion of the parkway actually occupied by their structures. Moreover, it also appears that they are restricting and, at least to some extent, limiting, the use by the interveners and the public of the balance of the property by reason of the presence thereon of these privately owned buildings of the appellants and the uses to which they are put. We think the conclusion is inescapable that such use of the parkway and street by the appellants is wholly inconsistent with the purpose to which they were dedicated to the public. And we may add that such construction of the dedication appears to be in keeping with the interpretation impliedly given it by the dedicator Eagle by his subsequent conduct. In 1925 Mr. Eagle applied to the commis-

sioners' court of Galveston county for permission to rescind his prior dedication of the portion of the parkway and street involved in this suit, which fact indicates that he believed the dedication which he had made precluded him from making private use of the street and parkway so long as the dedication thereof to the public was in force. Otherwise there would have been no reason for him to seek to rescind the dedication.

We now come to the consideration of a more serious matter. As shown by the findings above set out, Joe H. Eagle, the then owner of the land here involved, and as successor of the Eagle Land Company, original dedicator of the plat, made application to the commissioners' court of Galveston county for permission to rescind the act of dedication in so far as it related to the portion of the parkway and the street here involved. The application was made in accordance with article 7227, Vernon's Ann.Civ.St. The commissioners' court entered an order granting Eagle the right to convert back into acreage the land involved, and in accordance therewith Eagle filed and recorded in the Deed Records of Galveston county the declaration showing the cancellation of the portion of the dedication as provided by the statute. The order of the commissioners' court purports regularity and seems to have been passed after due notice and in compliance with the terms and provisions of the statute in question.

The question then is, What effect should be given the order of the commissioners' court of Galveston County?

■ It should be borne in mind that easements in streets and public parkways may be either of a public or a private nature. When the dedicator of an addition files a plat dedicating streets, alleys, and parkways to public use, the public in general acquires an easement in the streets, alleys, and parkways thus dedicated to the public use. But persons purchasing lots in accordance with such plat acquire an additional right to the use of such streets, alleys, and parkways by reason of their contract of purchase. In this case the original plat of the townsite of San Leon and the words of dedication which accompanied it constituted a representation to prospective purchasers of lots in the townsite that the street and parkway should be kept open for use of the lot owners and the public in general. The existence of such dedicated streets and parkway added to the value of the lots purchased by the interveners and other purchasers. And in acquiring their property in accordance with said plat and dedication the interveners had a right to rely upon the implied representation made by the dedicator that the street and parkway so dedicated to the public would never be put to any use inconsistent with the use to which they were dedicated. Such right, it will be observed, arose out of the contract and is quite separate and distinct from the right inuring to the general public by reason of the dedication. It is a well-settled rule in Texas that the two classes of easements, the one inuring to the public in general by the filing of the plat and dedication, and the other inuring to lot purchasers by reason of their contract, are separate and distinct rights which may coexist in contemporaneous and harmonious operation and one may be destroyed without necessary impairment of the other. That is to say, the proper public authority may vacate and close, or relinquish, the public easement without impairing any private or contractual rights which may exist in the easements affected. Dallas Cotton Mills v. Industrial Co. (Tex.Com.App.) 296 S.W. 503; Kahn v. City of Houston, 121 Tex. 293, 48 S.W.(2d) 595; Bowers v. City of Taylor (Tex.Com.App.) 16 S.W.(2d) 520; Simons v. G., H. & S. A. Ry. Co. (Tex.Civ.App.) 57 S.W. 199; Blair v. Astin (Tex.Civ. App.) 10 S.W.(2d) 1054. The town of San Leon is not and never has been an incorporated town, and it is our conclusion that the commissioners' court of Galveston county had the power, by virtue of the statute in question, to relinquish the public rights in the street and parkway by authorizing Eagle, the landowner, to rescind the dedication.

■ Nor do we think there is any merit in the appellees' contention that proper notice of the intended action of the commissioners' court is not shown to have been published. The recitals in the judgment are sufficient, we think, to show the giving of notice and that the commissioners' court acquired the jurisdiction to act and that its action is not subject to collateral attack.

■ But what about the private or contractual rights in easements? Obviously, such rights could not be destroyed, or in any way impaired, by the order of the commissioners' court. The interveners and other lot owners had acquired their lots long before the order was entered. Their rights had vested and they could not be

divested by such proceeding. But appellants contend that such private rights had been lost by limitation at the time the intervention was filed.

Public easements are not subject to the bar of the statute of limitations. Vernon's Ann.Civ.St. art. 5517; City of Dallas v. Early (Tex.Civ.App.) 281 S.W. 883; Richardson v. Lone Star Salt Co., 20 Tex.Civ.App. 486, 49 S.W. 647; Spencer v. Levy (Tex.Civ.App.) 173 S.W. 550. But an action to prevent encroachment upon a private easement may be barred by limitation. Simon v. Nance (Tex.Civ.App.) 142 S.W. 661; Martin v. Burr, 111 Tex. 57, 228 S.W. 543. And where the obstruction or nuisance is of a permanent character the right of action arises at once. 28 Tex.Jur. 152; Parsons v. Uvalde Electric Light Co., 106 Tex. 212, 163 S.W. 1, L.R.A.1916E, 960. The period of limitation of an action to abate the obstruction of a private easement by a building or permanent structure begins with the completion of the obstruction, Brown v. Texas Central Ry. Co., 42 Tex.Civ.App. 392, 94 S.W. 134; Ehlert v. G. H. & S. A. Ry. Co. (Tex.Civ.App.) 274 S.W. 172; and the action to abate the nuisance is barred in four years, Martin v. Burr, supra.

It appears in this case that the camp houses in question were erected by E. M. Biggers the latter part of 1929 and the yearly part of 1930. Appellees so pleaded. Appellants Hal Biggers and Ross Biggers acquired the bathhouses from E. M. Biggers. So the record discloses without dispute that said camp houses were erected more than four years before June 2, 1934, the date appellees filed their intervention wherein they sought, by injunction, to have said camp houses removed. Appellees' cause of action to abate such invasion of their rights by removal of the obstructions was therefore barred by limitation and the trial court erred in not sustaining the plea as to the camp houses. The other obstructions complained of appear to have been erected less than four years before the filing of the intervention. Appellees' suit was not barred as to them and the court properly granted the injunction to abate them.

On original submission of this case we affirmed the judgment of the trial court in toto. But on rehearing we have reached the conclusion that we were in error in affirming the judgment in so far as it applied to the camp houses of the appellants

Biggers. Appellants' motion for rehearing is therefore granted as to such holding, and it is ordered that the judgment of the trial court, in so far as it commanded the removal of the twenty camp houses erected by the appellants Biggers, be reversed and here rendered for appellants, and that the remainder of the judgment of the trial court be affirmed, and it is so ordered.

## On Rehearing.

In their motion for rehearing the appellees Davis and Younger vigorously attack our holding that the commissioners' court of Galveston county had authority to relinquish the public rights in the street and parkway in question on two grounds: First, it is insisted that article 7227, Vernon's Ann.Civ.St., pursuant to which the commissioners' court passed its order, is invalid because the powers sought to be conferred upon commissioners' courts by the Legislature in the enactment of the statute are not within the purview of the powers granted by the Constitution to commissioners' courts.

We fully recognize the rule contended for by appellees to the effect that commissioners' courts have no powers except those conferred by the Constitution and statutes, Edwards County v. Jennings (Tex. Civ.App.) 33 S.W. 585; and that statutes attempting to confer powers or duties upon commissioners' courts are invalid unless they fall within the boundaries of the power which the Constitution has created. Sun Vapor Electric Light Co. v. Keenan, 88 Tex. 197, 30 S.W. 868; Ranken v. McCallum, 25 Tex.Civ.App. 83, 60 S.W. 975. But the statute here in question does fall clearly within the powers conferred upon commissioners' courts by the Constitution. The Constitution, art. 5, § 18, confers upon the commissioners' court the power to "exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." Among the powers conferred upon the commissioners' court are those relating to the laying out, designating and abandoning of highways and of the levying, assessing, and equalizing of taxes. The act in question simply empowers the commissioners' court to authorize the rescinding of the dedications of plats not in incorporated cites or towns and throwing such subdivisions back into acreage. It is a matter of common knowledge, for instance,

that in this section of Texas, as an incident of the oil boom of 1900 and shortly thereafter, numbers of proposed towns were platted and laid out, and that many subdivisions which were platted with lots and blocks were never actually used for town purposes, or, having been once so used during a "boom," were partly or wholly abandoned. The existence of such platted dedications presented a serious problem of taxation to the commissioners' courts and the tax assessors and collectors of many counties because of the difficulty in assessing cheap lands which had been platted into such subdivisions. And, further, the streets and other portions dedicated to public use had thereby been removed from taxation. It may well be that practical necessity made it necessary that some expeditious means be provided for canceling such subdivisions and that the statute in question was enacted in response to such need. We have no doubt whatever that the act empowering the commissioners' court to authorize the canceling of such subdivisions in the manner prescribed is well within the constitutional grant of power conferring upon the commissioners' court jurisdiction over county business. See McLennan County v. Taylor (Tex.Civ.App.) 96 S.W.(2d) 997.

But it is further contended that the act itself did not empower the commissioners' court to cancel that portion of the subdivision in question which had been platted and dedicated as a parkway. In that connection the appellees direct our attention to the fact that in 1935 the Legislature did pass an act amendatory of article 6078, R.C.S., and being article 6078a, Vernon's Ann.Civ.St., which confers upon commissioners' courts the right to discontinue public parks. And they insist that because the earlier act did not in terms confer such power that the commissioners' court of Galveston county acted beyond the scope of its power in the instant case. Such contention overlooks the fact that what the commissioners' court of Galveston county did was not to cancel a park dedication. Instead the order authorized the canceling of the portion of a subdivision platted into lots and blocks. The fact that within the affected portion there was a portion of a parkway was immaterial. There is nothing in the original act to indicate that the Legislature intended to restrict the powers of the commissioners' courts to cancel such subdivisions to only such subdivisions or portions of subdivisions as did not contain platted parks or parkways.

The appellees have also filed a motion requesting us to certify to the Supreme Court the question of the validity and scope of the statute in question. This we do not do for the reason that we have no doubt of the correctness of our holding.

The motion for rehearing and the motion to certify are overruled.