YOUNG v. CITY OF COLORADO.
(No. 8080.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 6, 1915. On Motion for Rehearing, March 13, 1915.)

1. MUNICIPAL CORPORATIONS ☞51 — DISSOLVED CITY —RECEIVERS—STATUTES.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1080, authorizing any creditor of a dissolved city to apply to the district court for the appointment of a receiver, and after having posted in at least three public places in the county, one of which shall be in the city, notices stating the substance of the application, when and before whom the same will be heard, the judge may appoint a receiver, does not require that notices should be posted under the direction of the judge hearing the application, and if notices were posted by plaintiff in the proper manner, and for a sufficient length of time before the hearing, the statute was complied with, and the appointment of a receiver was valid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

2. MUNICIPAL CORPORATIONS ☞51 — DISSOLVED·CITY—APPOINTMENT OF RECEIVER—ESTABLISHMENT OF CLAIMS — COLLATERAL ATTACK.

An order appointing a receiver for a dissolved city, which recites that it appears that notice as required by law had been given and an order establishing a creditor's claim as a valid debt against the city, are not subject to collateral attack by the successor of the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

3. CONSTITUTIONAL LAW ☞312—MUNICIPAL CORPORATIONS ☞51—DISSOLUTION AND RECEIVER—DUE PROCESS OF LAW—NOTICE.

The method prescribed by Vernon's Sayles' Ann. Civ. St. 1914, art. 1080 et seq., for the appointment of a receiver for a dissolved city on giving notice, is due process of law, provided the notice was given for a reasonable length of time.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 928; Dec. Dig. ☞312; Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

4. MUNICIPAL CORPORATIONS ☞956 — LIABILITY FOR DEBTS.

Where a municipal corporation became liable for bonds issued, a tax lien to secure them existed on all property within the corporate limits, and the lien may be enforced by requiring an assessment and collection of taxes on the property.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2010–2013; Dec. Dig. ☞956.]

5. MUNICIPAL CORPORATIONS ☞51 — DISSOLVED CORPORATIONS—ESTABLISHMENT OF CLAIMS—STATUTORY PROCEEDINGS.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1082, providing that a receiver for a dissolved city, to whom the claim is presented duly verified, shall mark the same allowed, if he finds it correct, and file the same in the district court, and at its next regular term, if no protest be filed, the claim shall be approved by the court, is directory so far as it relates to the approval of a claim at the next regular term of court, and a premature approval of a claim is but an irregularity, not rendering the order of approval void, especially where the existence of the debt is not disputed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

6. MUNICIPAL CORPORATIONS ☞51 — DISSOLVED CITY—RECEIVERSHIP—APPROVAL OF CLAIMS.

An order, approving the claim of a creditor of a dissolved city, taken in connection with an order appointing a receiver of the city, is, in effect, a judgment, and precludes any question of liability of the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

7. MUNICIPAL CORPORATIONS ☞51—LIABILITY FOR DEBTS OF PREDECESSOR.

A city, incorporated after the appointment of a receiver of a dissolved city, embracing the same territory and pending receivership proceedings, is liable for the debts of the dissolved city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

8. MUNICIPAL CORPORATIONS ☞51—DEBTS—LIABILITY.

Where pending receivership proceedings of a dissolved city, a city embracing the same territory was incorporated, and thereby deprived the court of the power to satisfy a judgment against the dissolved city, the new city must levy a tax to satisfy the judgment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

9. CONSTITUTIONAL LAW ☞143—MUNICIPAL CORPORATIONS ☞51—DISSOLUTION—DEBTS—IMPAIRMENT OF OBLIGATION OF CONTRACTS—STATUTES.

A statute, which forbids a duly incorporated city embracing only the territory of a prior city duly dissolved from levying a tax to pay a judgment rendered against the dissolved city, is invalid, as impairing a contract with the dissolved city.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 346–348; Dec. Dig. ☞143; Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

10. JUDGMENT ☞866 — ENFORCEMENT—LIMITATIONS—MANDAMUS.

Mandamus, to enforce a judgment against a city by compelling the collection of a tax, is in effect an execution to collect the judgment, and the 10-year statute of limitations is applicable.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1603–1607; Dec. Dig. ☞866.]

11. MANDAMUS ☞151—PARTIES—OFFICERS—JUDGMENTS—ENFORCEMENT.

In mandamus to compel a city to levy a tax to satisfy a judgment rendered against its predecessor, which was duly dissolved, the receiver of the dissolved city is not a necessary party.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 291, 292; Dec. Dig. ☞151.]

12. CONSTITUTIONAL LAW ☞42—IMPAIRING OBLIGATIONS OF CONTRACTS—RIGHT TO INVOKE PROVISION.

Only one whose rights are invoked by a statute impairing an obligation of his contract can invoke the invalidity of the statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. ☞42.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. CONSTITUTIONAL LAW ☞43—WAIVER OF CONSTITUTIONAL RIGHTS.**

A person may, by acts or omissions, waive a right which he might otherwise have asserted under the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. ☞43.]

**14. CONSTITUTIONAL LAW ☞43—STATUTES— VALIDITY—RIGHT TO RAISE QUESTION.**

A city which has been organized under a statute, and which has proceeded to do business and has received benefits under it, cannot assert its invalidity.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. ☞43.]

**15. CONSTITUTIONAL LAW ☞43—STATUTES— VALIDITY—RIGHT TO RAISE QUESTION.**

A city which has availed itself of the benefit of the statutes allowing a dissolution of a former city by reincorporating the same territory, and which has assumed control thereof, may not assail the validity of the statutes as against a person having a contract with the former city.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. ☞43.]

### On Motion for Rehearing.

**16. CONSTITUTIONAL LAW ☞312—MUNICIPAL CORPORATIONS ☞51—DISSOLUTION— DUE PROCESS OF LAW—WHAT IS.**

The appointment of a receiver under Vernon's Sayles' Ann. Civ. St. 1914, art. 1080, for a dissolved city on the application of a creditor seeking to establish a judgment against the city, is ancillary only, and does not affect the rights of taxpayers of the dissolved city, and the appointment made after notice and hearing does not deny to taxpayers due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 928; Dec. Dig. ☞312; Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

**17. CONSTITUTIONAL LAW ☞316—MUNICIPAL CORPORATIONS ☞51—DISSOLUTION— DUE PROCESS OF LAW—WHAT IS.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1082, providing that before a receiver of a dissolved city shall approve any claim against it, notice must be given, and in the absence of some contest, the court may enter a judgment establishing as valid debts against the city claims presented and approved by the receiver, does not deny to taxpayers due process of law, though the taxpayers are not given the right of appeal from any judgment rendered against the receiver on a claim against which a protest has been filed, for the receiver may appeal.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 938; Dec. Dig. ☞316; Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

**18. CONSTITUTIONAL LAW ☞205, 249—MUNICIPAL CORPORATIONS ☞51—RECEIVER— SPECIAL PRIVILEGES — EQUAL PROTECTION OF THE LAW.**

The provision of the statute that a receiver of a dissolved city cannot plead limitations against demands asserted against the city is not invalid as granting a special privilege to creditors, nor a denial to the city of the equal protection of the law, for the act is applicable to all creditors and debtors of the same class.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 591–624, 710; Dec. Dig. ☞205, 249; Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. ☞51.]

**19. CONSTITUTIONAL LAW ☞43—STATUTES— VALIDITY—RIGHT TO QUESTION.**

Where a city was incorporated after Vernon's Sayles' Ann. Civ. St. 1914, art. 1080 et seq., providing for abolition of corporate existence, and the appointment of a receiver, had been in force for more than a year, it could not complain because it was denied a right to contest claims against the dissolved city, since the statute became a part of its charter and was binding on it.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. ☞43.]

**20. STATUTES ☞64 — VALIDITY—INVALIDITY IN PART—EFFECT.**

The invalidity of the provision of Acts 29th Leg. c. 134, relating to the abolition of corporate existence of cities, that the receiver shall not plead limitations against demands against the city does not render invalid the other provisions of the statute because the provision is but an incident to the main purpose of the act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. ☞64.]

**21. MUNICIPAL CORPORATIONS ☞18 — DE FACTO CORPORATION — LIABILITY FOR DEBTS.**

A de facto municipal corporation cannot urge the invalidity of its incorporation as a defense in a suit to collect a debt contracted by it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 41–44; Dec. Dig. ☞18.]

Appeal from District Court, Comanche County; W. W. Beall, Judge.

Action by William H. Young against the City of Colorado. From a judgment for defendant, plaintiff appeals. Reversed and remanded, and motion for rehearing overruled.

T. K. Skinker, of St. Louis, Mo., and Sayles, Sayles & Sayles, of Abilene, for appellant. Thomas J. Coffee and Royall G. Smith, both of Colorado, Tex., for appellee.

DUNKLIN, J. William H. Young instituted this suit against the city of Colorado to revive a judgment against a former municipal corporation, known as the city of Colorado and to which the defendant city is a successor, and to compel it, by writ of mandamus, to levy taxes for the payment of that judgment. Judgment was rendered in favor of the defendant, and the plaintiff has appealed.

The trial was by the judge without the aid of a jury, and findings of fact and conclusions of law appear in the record. The correctness of the findings of fact are not challenged by either party.

There have been five separate municipal corporations, the first under the name of the "Town of Colorado" and the last four under the name of "City of Colorado," all of which were created, or attempted to be created, under and by virtue of the general statutes of the state, and none of them by special charter. Their history is as follows: The first was chartered as the "Town of Colorado," and was duly incorporated in compliance with the statutes on February 25, 1882, under chapter 11, tit. 17, of the Revised Stat-

ute of 1879, the charter becoming effective March 17, 1882. The territory thus incorporated consisted of all of section 41, the N. ½ of section 44 and the N. W. ¼ of section 45, block 26, Texas & Pacific Railway Company survey, Mitchell county. The town so created continued to act until November 21, 1882, when the town council by resolution attempted to incorporate the same territory as a city, under the provisions of article 340 of the Revised Statutes of 1879. It operated under that charter as a city until May, 1883, when, becoming suspicious of the validity of the last incorporation, an election to incorporate as a city under the act of July 1, 1881 (Acts 17th Leg. c. 103), was ordered by the county judge of the county on June 13, 1883, upon a petition of 50 qualified voters. This petition was to include other territory additional to the territory covered by the original town, embracing, as it did, all of sections 40, 41, 44, and 45, block 26, Texas & Pacific Railway Company survey in Mitchell county. The election resulted in favor of such incorporation, and the result was duly declared by the county judge on July 3, 1883. On October 1, 1883, the corporation last named, being the third corporation, issued certain sewerage and drainage bonds aggregating the sum of $6,000, one of which, together with certain unpaid interest coupons attached thereto, William H. Young, the plaintiff in this suit, acquired and now holds. In August, 1889, quo warranto proceedings were filed by the state against Harness and others, officers of the last-named corporation, the purpose of which was to test the validity of that incorporation. The judgment of the district court was in favor of the state, and this judgment was affirmed by our Supreme Court, as shown in Harness v. State, 76 Tex. 566, 13 S. W. 535. By that decision it was held that the second and third attempted incorporations were invalid, and that the original town incorporation of March, 1882, still existed. Two reasons for this holding were assigned: The first being that article 340 of the Revised Statutes, which was enacted in 1881, did not confer upon the board of aldermen the power to change the original town into a city; and, second, that the original town charter had not been first dissolved, as could and should have been done under article 540 of the statutes. In 1885 (Acts 19th Leg. c. 60) article 340 was amended and in the decision above referred to the following language was used:

"The corporation created in March, 1882, still exists and if those who live within that desire to reincorporate and to have enlarged powers conferred on cities incorporating under chapter 1, tit. 17, they may do so by compliance with amendment of March 27, 1885."

Article 340, as so amended, now appears as article 762, 1 Vernon's Sayles' Tex. Civ. Stat. Article 540 of Sayles' Civil Statutes of 1887, which was the article referred to in that decision, with some slight changes made by amendment in 1897, appears now as article 1096, 1 Vernon's Sayles' Tex. Civ. Stat., the changes so made by the amendment being that in the former article the names of 50 voters were required to the petition, while in the new article the names of only 25 voters were required to the petition, and under the former article, in order to abolish the corporation, a majority of two-thirds of the voters were required, while in the amended article a simple majority was all that was necessary. The only other changes made by the amendment was the addition of a proviso that nothing in the act adopting the amendment should be construed as to repeal or otherwise affect any statute of the state providing for the incorporation of towns and villages for school purposes having not less than 200 inhabitants. After that decision of the Supreme Court the town of Colorado resumed operations under its original charter as a town, and as such elected officers and continued operating as such town until July 2, 1891, when it surrendered its charter, in the method provided by article 540, Sayles' Civ. St. 1887, referred to in Harness v. State, supra, and at the same time incorporated the same territory that was covered by the original town as the city of Colorado, in accordance with the provisions of article 340 as amended March 27, 1885. The city thus created assumed control of all the former city property, and continued in existence until August 7, 1895, on which date the corporation last formed was dissolved, in accordance with the provisions of articles 617a, 617b, 617c, c. 12, tit. 18, Sayles' Civ. St. 1897, enacted by the Legislature in 1895, and now appearing as articles 1077–1079, Vernon's Sayles' Tex. Civ. Stat. From the date of the abolition of that incorporation until February 7, 1907, the territory which formerly constituted the city of Colorado was not incorporated. But on February 7, 1907, the same territory, to wit, section 41, N. ½ of section 44, N. W. ¼ of section 45, block 26, Texas & Pacific Railway Company survey, Mitchell county, was reincorporated into the present city of Colorado, and such incorporation is now acting under that charter. Thus it appears that the first, fourth, and fifth incorporations were valid, while second and third were invalid, and that the sewerage and drainage bonds, one of which is owned by plaintiff Young, were issued by the invalid corporation attempted to be chartered in 1883, being the third incorporation mentioned above.

By article 541 of the Revised Statutes of 1879, shown in Sayles' Civil Statutes 1887, it was provided that when a town or village corporation should be abolished, as provided by article 540, all the property belonging to the corporation should be turned over to the county treasurer, and that the commissioners' court of the county should provide for the sale and disposition of the same, for the settlement of the debts due by the corporation, and for this purpose should have the

power to levy and collect a tax from the inhabitants of the town or village in the same manner as the corporation itself would be entitled to do. That article was amended by Acts Leg. 1891, c. 77, so as to include within its operation cities, as well as towns, who had been voluntarily abolished, also de facto corporations declared void by any court of competent jurisdiction, or which shall cease to operate and exercise functions of government. In Electric Light Co. v. Keenan, 88 Tex. 197, 30 S. W. 868, our Supreme Court held that the provisions contained in that article which imposed upon the county commissioners the duty of levying a tax to pay the debts of a municipal corporation which had been declared void was unconstitutional. At that time that provision was the only statutory provision by the Legislature for the collection of debts outstanding against a municipal corporation that had been abolished by any of the statutory modes, and no other statutory provision was enacted for the collection of such debts until in the year 1905, when the Legislature passed an act, appearing as chapter 134, p. 325, Acts of 1905, and as articles 1080 to 1092, inclusive, 1 Vernon's Sayles' Tex. Civ. Statutes, except that by Acts of 1909 article 1087 was so amended as to require the assessment and collection of all taxes ordered by the court to be levied to be made by the county tax assessor and collector, instead of by the receiver. Article 1080 reads as follows:

"In all cases where any city or town having theretofore had a valid corporate existence, under the laws of the state of Texas, has abolished said corporate existence in the manner provided by law, and in all cases where any city or town having a valid corporate existence under such laws, may hereafter abolish their corporate existence, any creditor of any such city or town may apply to the judge of the district court of the judicial district, in which such city or town may be situated, for the appointment of a receiver for said corporation; and, after having posted up in at least three public places in the county wherein such city or town is located, one of which shall be in said city or town, written notices stating the substance of the application, when and before whom the same will be heard, such judge, either in term time or vacation, may appoint a suitable person as such receiver for such corporation, and shall fix the amount of bond to be given by such receiver in at least double the probable amount of the indebtedness or value of the property of such city or town, conditioned for the faithful performance of his duties as such officer, and for the paying over and delivery of all money and property coming into his hands as such receiver, to the party or parties entitled to receive same, such bond to be approved by the judge making the appointment; and same, together with the order of appointment, shall be filed with, and recorded in, the minutes of said court by the clerk of the district court of the county wherein such city or town is situated."

By article 1081 it is made the duty of the receiver, after having qualified by giving the required bond, to return to the court appointing him an inventory of all the property, etc., received by him and under order of court to institute such suits as may be necessary to recover any such property. Article 1082 reads:

"Any person, firm or corporation, having any claim against such city or town, shall, within six months from the appointment of said receiver, present to him a statement of the amount of such claim, duly verified, which, if he finds correct, he will mark allowed and file same in said district court; and at its next regular term, if no protest be filed as hereinafter provided, said claim shall be approved by said court and shall thereafter be considered a valid debt, against such city or town; provided, however, that no such claim or account against such city shall be allowed or approved by the receiver of such city without notice of the presentment thereof first having been given, by publication in some newspaper, if any in the town or city where same is filed or presented, for four successive weeks, and in case there be no newspaper published in such town or city, then by posting written or printed notice of the presentment of such claim, to be posted at the court house door of the county in which said town or city is situated for four weeks prior to the allowance of said claim or account. And such notice, whether published or posted, shall state the name and residence of the creditor, the amount and date of said claim and account, and for what purpose incurred. In case such receiver finds any claim so presented to him unjust, in whole or in part, he shall indorse his finding thereon, and return same to the claimant, who may file same with the district court, if he desires to accept the finding of the receiver, and such claim for the amount allowed by the receiver may be acted upon by the said court as other claims. In case any protest by any taxpayer of said city or town be filed against any claim filed in said court, together with a bond of sufficient sureties, to be approved by said court, that he will pay all costs of suit in case said claimant establishes his claim in full, in any state court in which he may sue thereon, then such district court shall refuse to approve such claim until it shall have been established by judgment, recovered thereon in a state court of competent jurisdiction; and such suit to establish such claim, or any claim disallowed in part or in whole, may be brought against the receiver, who shall make all legal defenses against such claim; but the court trying said claim is hereby authorized to hear and consider any material defense that may be, or may have been, urged against said claim, except that of limitation, though such claim, prior thereto, may have been reduced to judgment, but such judgment shall be considered, upon such trial as prima facie evidence of the justness of such claim. Any judgment recovered against such receiver upon a claim against such city or town shall be allowed by the receiver and approved by the district court wherein the receivership is pending; but, in all suits upon claims wherein protest and bond were filed in the district court, the claimant shall be liable for the costs of the suit, unless he recovers judgment for the full amount for which he asked the approval of the said district court; and, in suits upon claims rejected in part by the receiver, the claimant shall be liable for the costs of the suit, unless he establishes his claim for a greater amount than was allowed by the receiver."

Article 1086 makes it the duty of the court appointing the receiver to provide for the payment of all claims legally established against the city or town, to determine the priority of any claims, and to order a sale of all property in the hands of the receiver, subject to sale for such purpose, and to direct such receiver to pay such claims.

Article 1086a reads:

"In case the money and proceeds of property are insufficient to pay such indebtedness, then it shall be the duty of said court at the request of any creditor, at the first regular term of said court in each year, to levy a tax upon all the property and real and personal estate, situated within the limits of said city or town, as previously incorporated, on the first day of the preceding January, not exempt from taxation under the constitution and laws of this state, sufficient to discharge the indebtedness, but not to exceed the rate allowed by existing law for such purposes in incorporated cities and towns."

In December 18, 1906, in cause No. 1101, styled "Ex parte Rankin," Robert Rankin, William H. Young, Alonzo White, and Alfred .B. Connable, as plaintiffs, filed a petition in the district court of Mitchell county praying for the appointment of a receiver for the dissolved city of Colorado, the same being the fourth municipal corporation mentioned above. In that petition, the history as recited above, of the four first municipal corporations was set out, also the issuance of sewerage and drainage bonds in 1883 by the third incorporation, the ownership of one of those bonds by plaintiff William H. Young, also the issuance of city hall bonds by the same corporation for the building of a city hall in said city; that both sewerage and drainage bonds were owned by the plaintiffs in that suit; that all of said bonds were sold by said city and the proceeds applied to the uses for which they were intended; the proceeds of the sewerage and drainage bonds were applied to the construction of a sewerage and drainage system, and the proceeds of the city hall bonds were applied to the erection of a city hall; that all of said improvements were made within the territory covered by the original town of Colorado, to wit, section 41, N. ½ of section 44 and N. W. ¼ of section 45. It was further alleged in that petition that the territory embraced in the original town was the only territory that was ever actually occupied and inhabited as a town; in other words, that the territory added to the original town by the attempted incorporation in 1883 was never actually occupied or inhabited as a town. According to further allegations in that petition, when the original town resumed control after the decision of the Supreme Court in Harness v. State, it assumed control and ownership of all the property of the municipality, including the sewerage and drainage system constructed by the incorporation of 1883, and that the fourth incorporation of 1891, which was dissolved in 1895, assumed control and ownership of such sewerage and drainage system, as well as other properties of the municipality, and that by reason thereof said last-named corporation became liable for such drainage and sewerage bonds, as well as the other obligations mentioned above. In the petition the appointment of a receiver was invoked under the act of 1895 above referred to.

On July 9, 1906, that petition for the appointment of a receiver, before being filed in the district court, was presented to Hon. Jas. L. Shepherd, judge of the Thirty-Second judicial district, in which district Mitchell county was situated, but that judge recused himself from acting by reason of the fact that he was a taxpayer of the city of Colorado. On August 6, 1906, the petition was presented to Hon. Jas. R. Harper, judge of the 'Forty-Fourth judicial district, who indorsed thereupon an order granting the application for the appointment of a receiver and appointing A. B. Robertson as such receiver, and fixing his bond as such receiver in the sum of $60,000, which bond was given by Robertson and approved by Judge Harper on August 30, 1906. In passing, it may be said that neither of the parties to this suit claimed that the order of Judge Harper had any legal effect; it being virtually conceded that he was without jurisdiction to make it. On January 4, 1907, the petition was presented to Hon. Cullen C. Higgins, judge of the Thirty-Ninth judicial district, who was then presiding as the judge of the district court of Mitchell county, and the application for the appointment of a receiver was granted by Judge Higgins in open court, who then and there appointed A. B. Robertson receiver of the dissolved city of Colorado. Acting under that appointment, Robertson qualified as such receiver by giving the bond required by the order and taking the oath prescribed by law, which bond was by Judge Higgins duly approved. The order of Judge Higgins making such appointment is as follows:

"In District Court of Mitchell County, Texas. "Ex parte Robert Rankin et al. No. 1101. "Saturday, January 4, 1907.

"On this day came on to be heard the above entitled and numbered cause, and it appearing to the court that a petition in this cause, was presented to Hon. James L. Shepherd, judge of the Thirty-Second judicial district of Texas, in chambers, on to wit, July 9, 1906, and the said James L. Shepherd thereupon indorsed upon said petition as follows: 'The foregoing petition of Robert Rankin et al., for the appointment of a receiver of the city of Colorado, Tex., having been presented to me, I am of the opinion that I am recused in the matter, both in the action hereafter to be considered and the application of a receiver, being a resident taxpayer of the city of Colorado, Tex., as it formerly existed, and being directly affected by the action of the receiver under the acts of the Twenty-Ninth Legislature, chapter 134, approved April 17, 1905, and it is considered and here certified by the court this July 9, 1906.'

"And thereupon and afterwards, to wit, on August 1, 1906, the said petition was presented to Hon. James R. Harper, judge of the Thirty-Fourth judicial district of Texas, who thereupon indorsed the following order on said petition, to wit:

" 'The foregoing petition having been presented to me in vacation, and it appearing that notice as required by chapter 134 of the Laws of 1906 has been complied with, and that the judge of the Thirty-Second judicial district, who is the judge of the district court of the judicial district in which the city of Colorado is situated, is disqualified from sitting in the case:

It is therefore ordered that said petition be granted, and that A. B. Robertson of Colorado, Mitchell county, Tex., be and he is hereby appointed receiver of the former city of Colorado, and his bond is fixed at $60,000 upon the giving of which bond, as required by law, said receiver shall have all the powers conferred upon him, by law, as is provided by chapter 134, of the Acts of 1905. * * * James R. Harper, Judge of Thirty-Fourth Judicial District of Texas.'

"And it further appearing to the court that afterward, to wit, on August 30, 1906, the said James R. Harper approved the bond of the said A. B. Robertson as receiver, with H. B. Smoot, F. M. Burns, and J. S. McCall as sureties, which said bond is here now entered of record.

"And it further appearing to the court that when this cause was called for trial, at this term of the court, Hon. James L. Shepherd, judge of the Thirty-Second judicial district of Texas, who is the judge of the district in which the dissolved city or town of Colorado is situated, was disqualified from trying the case and so entered his disqualification of record in this case; and it further being shown to the court that the said Hon. James L. Shepherd immediately notified the Governor by wire of his disqualification, and designated Cullen C. Higgins, and that thereupon the Governor of the state of Texas designated Hon. C. C. Higgins, judge of the Thirty-Ninth judicial district of Texas, who is the judge of the district court of an adjoining district, to exchange and try this case, and the Governor having so notified both of said judges, and thereupon came on to be heard the application of Robert Rankin et al. before Hon. C. C. Higgins, judge of the Thirty-Ninth judicial district of Texas, and he exchanged with said judge; and, the said petition of the said Robert Rankin et al. having been presented to me in open court, and it appearing that notice as required by chapter 134 of the Laws of 1905 had been given as required by said laws, and that the judge of the Thirty-Second judicial district of Texas, who is the judge of the district court of the judicial district in which the dissolved city of Colorado is situated, is disqualified from sitting in the case.

"It is therefore ordered, adjudged, and decreed by the court: that the appointment of a receiver and approval of the bond as heretofore made by Hon. James R. Harper, judge of the Thirty-Fourth judicial district of Texas, be and the same is hereby approved and said petition is granted, and A. B. Robertson of Colorado, Mitchell county, Tex., is hereby appointed receiver of the former city of Colorado, and his bond fixed at $60,000, upon the giving of which bond, as required by law, said receiver shall have all the powers conferred upon him by law as it is provided by chapter 134 of the Acts of 1905, and the said A. B. Robertson having now presented to me the same bond which was heretofore presented to Hon. James R. Harper, judge of the Thirty-Fourth judicial district of Texas, and said bond being found sufficient in form and amount, said bond is hereby by me approved, and the clerk of the district court of Mitchell county, Tex., is ordered to enter these proceedings as of this date and record said bond as required by chapter 134 of the Acts of 1905.

"Cullen C. Higgins,
"Judge of the Thirty-Ninth Judicial District of Texas, Presiding Judge of the District Court of Mitchell County, Texas."

On June 25, 1907, Judge Higgins, acting as judge of the Thirty-Second district court of Mitchell county, made the following order as appears in the minutes of that court:

"In the District Court of Mitchell Co. Tex. June Term, 1907, Tuesday June 25, 1907.

"Ex parte Robert Rankin et al.  No. 1101.

"On this day this cause was regularly called for trial, when came A. B. Robertson, receiver of the dissolved city of Colorado, appointed by this honorable court at the January term, A. D. 1907, and made his first annual report under oath, which was filed in the district court of Mitchell county, Tex., June 25, 1907, and, the said report having been carefully considered by the court and the petition presented to the receiver, together with the advertisement of the claims against the said dissolved city of Colorado, and the evidence upon which the receiver acted having all been presented to the court, it is ordered, adjudged, and decreed by the court that the said report be and the same is hereby approved as a whole, and that in accordance with the findings of said receiver and the law and the evidence, this court doth now establish as a valid and subsisting claim against the dissolved city of Colorado: * * *

"Fifth. Claim in favor of William H. Young for $1,360, of which amount $1,000 bears interest at the rate of 8 per cent. per annum from October 1, 1893, $40 of which bears interest at the rate of 6 per cent. per annum from October 1, 1889; $40 of which bears interest at the rate of 6 per cent. per annum from April 1, 1890; $40 of which bears interest at the rate of 6 per cent. per annum from October 1, 1890; $40 of which bears interest at the rate of 6 per cent. per annum from April 1, 1891; $40 of which bears interest at the rate of 6 per cent. per annum from October 1, 1891; $40 of which bears interest at the rate of 6 per cent. per annum from April 1, 1892; $40 of which bears interest at the rate of 6 per cent. per annum from October 1, 1892; $40 of which bears interest at the rate of 6 per cent. per annum from April 1, 1893; $40 of which bears interest at the rate of 6 per cent. per annum from October 1, 1893. * * *

"And it is further ordered, adjudged, and decreed by the court that the above and foregoing claims have been duly and legally presented to the receiver of said dissolved city of Colorado, and notice of the presentment thereof has been duly given as required by law, by publication in a newspaper published in the city of Colorado, Tex., for four consecutive weeks, and, after such notice, stating the name, stating the character, the amount and date of such claim, the account and for what purpose incurred, same was presented to the receiver with the evidence of the justness of said claim, and said receiver has indorsed his finding thereon, finding said claim just as a whole.

"Wherefore it is ordered, adjudged, and decreed by the court that said claims are valid, just, and subsisting claims against the dissolved city of Colorado, and said claim shall be so registered by the receiver as such.

"The above and foregoing minutes, beginning on page 478 down to the center of page 480, in the case of Ex parte Robert Rankin et al., No. 1101, read and approved by me in open court, this 25th day of June, A. D. 1907.

"Cullen C. Higgins, Judge Thirty-Ninth Judicial District of Texas, Presiding."

The claims for other drainage and sewerage bonds and for city hall bonds were also approved in said order, but are omitted here for the sake of brevity. The report made by the receiver and referred to in said order was filed in said court on June 25, 1907, the same date of the judgment, and contains the statement as shown in the order of the presentation of the claims to the receiver, of his allowance thereof and the publication there-

of in a newspaper, as recited in the court's order, and the report was duly verified by the receiver. That judgment, in connection with the order appointing a receiver, is the judgment relied on by the plaintiff in the present case as a valid and subsisting judgment and as a proper basis for the mandamus prayed for against the present city of Colorado, after the same has been revived, as prayed for.

One of the contentions made by the defendant in the present case is that the appointment of the receiver and the judgment of June 25, 1907, were without legal service, either upon the dissolved city of Colorado or upon its successor, which was chartered February 7, 1907, more than five months prior to the date of the judgment, and which was not made a party to that suit. The following appears in the trial judge's findings of fact in this suit:

"I find that the following notice was given by the relator, by posting up at three public places in Mitchell county, Tex., one of which was within the limits of the dissolved city of Colorado, to wit:

"'Public Notice.

"'Notice is hereby given to the inhabitants of the territory embraced within section No. forty-one, the north half of section No. forty-four, and the northwest quarter of section No. forty-five, in block No. 26, in Mitchell county, Texas, as surveyed by the Texas & Pacific Railway Co. That on the 30th day of June, 1906, or as soon thereafter as can be heard we will present an application to the judge of the district court of Mitchell county, praying for the appointment of a receiver of the corporation heretofore organized, so as to include the above described territory and formerly known as the city of Colorado, the said application will show in substance that in the month of March, 1882, the inhabitants residing within the territory above described became a corporation by the name of the town of Colorado. That in the month of July, 1883, the inhabitants of sections Nos. 40, 41, 44, and 45 in said block were incorporated by the name of the city of Colorado; that thereafter in pursuance of ordinances duly passed, said city issued $6,000.00 of bonds for sewerage and drainage purposes and $7,000.00 of bonds for the city hall, and provided for the levy and collection of taxes to pay said bonds and interest on them. That the undersigned became and are the owners of said bonds and their interest, and that the same are unpaid. That in a case which went from the district court of Mitchell county to the Supreme Court of Texas in the year 1890, it was determined by the said courts that the organization of said city was void, and that the said town was still in being. That thereupon said town was reorganized, and acted as such until the month of July, 1891, when it became the city of Colorado, embracing the territory first herein described, and liable for the debts of the city first herein described, and that in the year 1895 the city of Colorado was abolished by a vote of the inhabitants thereof, and an order of the county judge of Mitchell county.
[Signed]    "'Robert Rankin.
          "'William H. Young.
          "'Alonzo White.
          "'Alfred B. Connable.'"

There is no specific finding of fact by the trial judge that no other notice was given of the application for the appointment of a receiver, and even if there had been, we do

not think it could have been given any effect for the reasons hereinafter stated.

[1] It will be noted that in the act of 1905, authorizing the appointment of a receiver of a dissolved town or city, it is provided that a creditor—

"may apply to the judge of the district court of the judicial district, in which such city or town may be situated, for the appointment of a receiver for said corporation; and, after having posted up in at least three public places in the county in which such city or town is located, one of which shall be in said city or town, written notices stating the substance of the application, when and before whom the same will be heard, such judge, either in term time or vacation, may appoint a suitable person as such receiver for such corporation.'"

The act does not provide who shall post the notices, nor for how long the same shall be posted, nor whether or not the judge to whom the application shall be presented shall first fix a day for the hearing. Appellee contends that, at all events, the act requires the notices to be posted under the direction of the judge after he has first set the day for the hearing, and that it affirmatively appears from the recitals in the order of Judge Higgins appointing the receiver that no notices were posted under his direction, since such recitals show that the application was heard by Judge Higgins on the same day Judge Shepherd's disqualifications were certified to the Governor and Judge Higgins was appointed to exchange with Judge Shepherd to preside over the district court of Mitchell county. On January 4, 1908, Judge Higgins, as presiding judge of the district court of Mitchell county entered an order in the minutes of that court directing the receiver to levy and collect a tax upon the property within the territorial limits of the dissolved city to liquidate the claims which had been allowed by that court on June 25, 1907, as shown above. That order recites the previous order of Judge Higgins of January 4, 1907, appointing the receiver, and the order of January 25, 1907, approving the claims. The order contains a further recital that the plaintiffs in Ex parte Rankin, No. 1101, posted notices, a copy of which is contained in the court's findings in this case, and is set out above. This order, directing a tax levy was pleaded by the plaintiff in this case for the purpose of showing that the claims asserted by the plaintiffs in that suit were again recognized as just and valid and again established as valid judgments against the dissolved city of Colorado as appears from court's recital to that effect.

Appellee insists that this order affirmatively shows that the only notice given of the hearing of the application for a receiver prior to the date Judge Higgins appointed him was the notice given by Rankin, Young, White, and Connable, and copied above, which was wholly insufficient. The order last mentioned was made at a term of court subsequent to the one at which the receiver was appointed and also subsequent to the term of court at

which the order of June 25, 1907, approving the claims as valid and subsisting debts against the dissolved city. After adjournment of those terms the court lost all jurisdiction to change or vary the legal effect of those orders. If those orders were valid, they remained so, regardless of any recital in the order last mentioned. Furthermore, the order last mentioned contains no express recital that the notice referred to was the only notice given.

We are of the opinion, further, that it was not necessary to the validity of the order appointing the receiver that the notices should be posted under the direction of the judge hearing the application. In other words, if the notices were posted by the plaintiffs in that case in the proper manner and for a sufficient length of time before the application was heard, the requirements of the act of 1905 were accomplished.

[2] We are of the opinion, further, that the recitals in that order made by Judge Higgins on January 4, 1907, that "it appearing that notice as required by chapter 134, of the Laws of 1905, had been given as required by said laws," is conclusive as against the collateral attack now made upon that order by the appellee, in view of the further fact that the particular notice so found to have been given is not identified in the order. Even though it should be said that it appears from the record that the application for the receiver had never come to Judge Higgins' notice prior to January 4, 1907, the day he appointed the receiver, nevertheless that fact is not inconsistent with the presumption which must obtain that Judge Higgins, before appointing the receiver, heard evidence sufficient to satisfy himself that the requirements of the statute relative to giving prior notice had been fully complied with.

We, therefore, hold that the order appointing the receiver and the order of June 25, 1907, establishing plaintiff's claim as a valid debt against the dissolved city, were valid and not subject to the collateral attack made herein by the appellee. Gibbs v. Scales, 54 Tex. Civ. App. 96, 118 S. W. 188, and authorities there cited; Treadway v. Eastburn, 57 Tex. 209; Heck & Baker v. Martin, 75 Tex. 469, 13 S. W. 51, 16 Am. St. Rep. 915.

[3] This conclusion renders it unnecessary to discuss the contention made by appellee that the notice posted by plaintiffs in Ex parte Rankin did not run in the name of "The State of Texas," as citations are required to run. We are of the opinion, further, that the method prescribed by the Acts of 1905 for giving notice as a preliminary step to the appointment of a receiver would be due process of law within the meaning of the Constitution, if such notice was given for a reasonable length of time, and it must be presumed that by that act the Legislature intended that such notice would be posted for such a period of time. Wharton County

174 S.W.—63

Drainage Dist. v. Higbee, 149 S. W. 381, and authorities there cited.

[4] If the corporation of 1891 became liable for the drainage and sewerage bonds, then to secure them a tax lien existed upon all property situated within the corporate limits of that city, and the suit of Ex parte Rankin was in the nature of an administration or action in rem to enforce such lien by requiring the assessment and collection of taxes upon such property. Indeed, no personal judgment was sought against the city corporation which had been abolished, nor against any one else, nor did the act of 1905 authorize a personal judgment against any one in a suit instituted thereunder. 34 Cyc. 17, 18.

[5] Section 2 of the act of 1905, above referred to, article 1082 of Vernon's Sayles' Tex. Civ. St., provides that a receiver to whom a claim is presented duly verified shall mark the same allowed, if he finds it to be correct, and shall file the same in the district court, "and at its next regular term, if no protest be filed as hereinafter provided, said claim shall be approved by said court and shall thereafter be considered a valid debt against such city or town." Appellee insists that, as the order of June 25, 1907, approving plaintiff's claim, was entered on the same day the claim was filed by the receiver in the district court, and not at the next regular term of the court, the order was therefore invalid. With this contention we are unable to agree. By the appointment of the receiver after due notice the court had already acquired jurisdiction over the property situated within the corporate limits of the city for the purpose of levying and collecting taxes to pay the debts of that city. If the claims had been filed the day before the court convened, under the very letter of the statute, the court could have approved it the following day, and we cannot believe that the provision for the approval of the claim at the next regular term of court was mandatory to the extent of depriving the court of the power to approve the claim at any other term of court. We believe rather that that provision of the statute was directory only. At all events, if it could be said that the approval of the claim was premature, that fact would be an irregularity only, and would not render the order void, especially in this proceeding in which there is no claim by the appellee that the bond held by the plaintiff Young was not a valid debt against the city which issued it, and in view of the further findings by the trial court that no contest of plaintiff's claim was ever made in cause 1101, Ex parte Rankin. McNeill v. Hallmark, 28 Tex. 157; Salter v. Hilgen, 40 Wis. 363; 23 Cyc. 1090 to 1094.

[6, 7] The approval of plaintiff's claim as a valid debt against the dissolved city of Colorado, in connection with the order appointing the receiver, has the effect of a judgment,

and precludes any question of liability of that corporation for plaintiff's debt. The incorporation of the present city occurred after the appointment of the receiver and pending the receivership proceedings. Hence its rights under such incorporation are subordinate to the rights of plaintiff Young in that suit, including the judgment rendered therein in his favor against the dissolved city for the amount of his claim, notwithstanding the fact that it was not made a party to the suit after its incorporation. Having incorporated the same territory that was covered by the dissolved city, and having thereby assumed the liabilities of the former city, appellee occupies essentially the position of a purchaser of real estate from a party to a suit, during the pendency of the suit, and the rules applicable to a purchaser pendente lite are applicable to appellee here. Latta v. Wiley, 92 S. W. 433, and authorities there cited.

[8, 9] If, as contended by appellee, its incorporation had the effect to deprive the district court in which the receivership was pending of the power through its receiver to assess and collect taxes to pay Young's bond, by reason of the fact that after such incorporation the power to levy and collect taxes was by statute vested in the city, nevertheless the act of incorporation did not have the effect to deprive that court of the power to render a judgment against the dissolved city for the debt it owed Young. And if by such incorporation appellee deprived the district in which the receivership was pending of the power to levy a tax to satisfy plaintiff's judgment, it has assumed the burden of making such tax levy itself for the purpose of satisfying that judgment. In the City of Quanah v. White, 88 Tex. 14, 28 S. W. 1065, our Supreme Court held that article 541 of the Revised Statutes did not impose upon a municipal corporation, which takes the place of a dissolved corporation, the obligation of paying the debts of the former corporation, unless the new corporation committed itself to such a burden by a vote of its citizens. But aside from that statute, under the well-established rule of equity, when the same, or substantially the same, inhabitants form a new corporation with the same territorial limits, the new corporation is treated as the successor of the old and subject to its liabilities. Even if the Legislature had expressly forbidden the new corporation to levy a tax to pay that judgment, the same would have been unconstitutional and void, in that it would have impaired plaintiff Young's contract with the dissolved city. McQuillin on Municip. Corp. vol. 1, § 315; Ranken v. McCallum, 25 Tex. Civ. App. 83, 60 S. W. 975; Shapleigh v. San Angelo, 167 U. S. 646, 17 Sup. Ct. 957, 42 L. Ed. 310. Indeed we do not understand from appellee's brief that the correctness of the foregoing conclusion of law is questioned.

[10] The receivership proceeding having been instituted in 1907, the present suit to revive the judgment therein rendered is not barred by limitation, since the statute of limitation of 10 years is the only statute applicable to this action, and the writ of mandamus being, substantially, an execution to collect the judgment, limitation would not apply to the prayer for that relief, if there was otherwise a sufficient basis for granting said writ. City of Austin v. Cahill, 99 Tex. 172, 88 S. W. 546, 89 S. W. 552.

[11] We overrule the further contention presented by appellee that the receiver was a necessary party to the present suit to revive that judgment, since he was in no sense a party to the suit of Ex parte Rankin, but was merely an arm or officer of the court to perform the duties imposed upon him by the act of 1905. 34 Cyc. 236–430.

[12-14] Appellee insists that as the Supreme Court in Electric Light Co. v. Keenan, 88 Tex. 197, 30 S. W. 868, decided that the provisions of the former law for the collection of debts against a dissolved municipal corporation through the commissioners' court was unconstitutional, and as that was the only statutory provision for the collection of such debts by a tax levy until the passage of the act of 1905, all prior statutes relating to the dissolution of municipal corporations by vote of its citizens were unconstitutional, for the reason that the effect of the same was to impair the obligation of contracts made by such corporation before such attempted dissolution. In other words, that the statutes providing for the dissolution of corporations by votes of its citizens with no remedy provided for the collection of debts owing by such corporations were unconstitutional because no remedy was left for the collection of such debts. The decision of Ringling v. City of Hempstead, 193 Fed. 596, 113 C. C. A. 464, is cited in support of this contention. In the first place, that decision can be distinguished from the present suit in that the unconstitutionality of the statute was invoked by the creditor, while in the present case the creditor, Young, has not invoked it, but has permitted his claim to lie dormant until the passage of the act of 1905, giving him a remedy for the collection of his debt. It is well settled that only those whose rights are invaded by statutes impairing obligations of contract can invoke the unconstitutionality of such statutes. 8 Cyc. 787–789. It is also well settled that a person may by his act, or omission to act, waive a right which he might otherwise have under the provisions of the Constitution. 8 Cyc. 791, 792. "Where corporations have been organized which proceed to do business under the provisions of a statute and receive benefits thereunder, they cannot be heard to allege that such a statute is unconstitutional. The laws under which corporations organize become a part of their charters and are binding upon them." 8 Cyc. 793. See, also, deci-

sions cited in 10 Cent. Dig. Constitutional Law, pars. 40, 41; 4 Dec. Dig. Constitutional Law, §§ 42, 43 (1), 43 (2).

[15] Appellee, having availed itself of the benefit of the statutes allowing the dissolution of the former city of Colorado by reincorporating the same territory, and having assumed jurisdiction and control of the same territory, and not being a party to the contract alleged by Young, is in no position to invoke the provisions of the Constitution as against those statutes.

Appellee has presented a cross-assignment of error to the action of the trial court in overruling a special exception to plaintiff's petition. As the questions presented by that exception have already been decided adversely to appellee in the foregoing conclusions, the cross-assignment is overruled.

The trial judge made a further finding upon the trial of this cause, in effect, that appellee has owned no property subject to execution since its incorporation. It follows from this that appellee has not in its possession any property subject to sale belonging to its predecessor; and it was shown by the report of the receiver, and by orders of court in Ex parte Rankin, that at the time of its dissolution the dissolved city of Colorado owned no such property.

For the reasons indicated the judgment of the trial court is reversed, and judgment is here rendered in favor of appellant, reviving the judgment in his favor, above set out, against the dissolved city of Colorado, the immediate predecessor of appellee, rendered by the district court of Mitchell county on June 25, 1907, for the principal sum of $1,360, and bearing interest as shown in said judgment, and a writ of mandamus is hereby awarded against the appellee herein, commanding and directing the officers composing its city council to levy and collect a tax upon all the property, both real and personal, situated within the limits of said appellee city on the 1st day of January, 1915, not exempt from taxation under the Constitution and laws of this state, sufficient to discharge the above-mentioned judgment in favor of appellant Young, but not to exceed the rate allowed by existing law for such purposes in incorporated cities and towns, and when such tax is so collected, that same be applied to the satisfaction of said judgment in favor of appellant Young.

## On Motion for Rehearing.

[16] Appellee urgently insists that chapter 134 of the Acts of 1905, discussed in the original opinion, provides for the taking of property without due process of law, and is therefore in violation of the Constitution of the state and of the United States. This criticism is addressed to the entire act, including the first section, which provides for the appointment of a receiver. Stress is laid upon the failure of the first section, which is article 1080, Vernon's Sayles' Tex. Civ.

St., to fix the period of time for the posting of prior notices of the time when and the place where an application for the appointment of a receiver would be heard. The following announcement in 8 Cyc. 1097, seems well supported by the authorities:

"As the fourteenth amendment was not intended to control procedure in the states, they may, except so far as specially limited by local Constitutions or other provisions of local law, dispense with jury trials in civil cases; and may prescribe such rules of procedure as they see fit, the only constitutional limitation upon the power being that fundamental and established rights must be preserved."

In 10 Encyclopedia of United States Supreme Court Reports, p. 545, occurs the following:

"Even though the grounds set forth in the bill were not sufficient to justify the appointment of a receiver, yet if they were ample to give the court jurisdiction to do so, its order making the appointment is not wholly void" (citing Sage v. Memphis, etc., R. R. Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694).

In 5 Encyclopedia of United States Supreme Court Reports, the following statements are well supported by the decisions of that court:

"A statute conferring special jurisdiction upon a court to pass upon a given matter is not necessarily void because of its failure to make provision for notice as to time of hearing; the court, having jurisdiction to hear and determine, has the power to regulate the time of hearing and to provide by rule for reasonable notice; and when this is done, the due process requirement is satisfied" (citing Guthrie Natl. Bank v. Guthrie, 173 U. S. 528, 19 Sup. Ct. 513, 43 L. Ed. 796). Page 644.

"Due process is afforded litigants if they have an opportunity to be heard at any time before the final judgment is entered" (citing among other decisions, Gallup v. Schmidt, 183 U. S. 300, 22 Sup. Ct. 162, 46 L. Ed. 207). Page 657.

"A hearing before judgment, with full opportunity to present all the evidence and the arguments which the party deems important, is all that can be adjudged vital. Rehearings, new trials, are not essential to due process of law, either in judicial or administrative proceedings. One hearing, if ample, before judgment satisfies the demand of the Constitution in this respect" (citing, among other decisions, Mich. Cen. R. R. Co. v. Powers, 201 U. S. 245, 26 Sup. Ct. 459, 50 L. Ed. 744). Page 662.

It is clear that the foregoing announcements have reference to hearings of causes of action, and not to mere incidental questions of procedure.

In Church v. Kelsey, 121 U. S. 282, 7 Sup. Ct. 897, 30 L. Ed. 960, it was held that the constitutional provisions against the deprivation of life, liberty, or property without due process of law does not prevent a state from prescribing an equitable proceeding for cases demanding equitable relief.

In Scott v. Cox, 30 Tex. Civ. App. 190, 70 S. W. 802, it was held, even upon a direct appeal, that the appointment of a receiver without notice and before filing of a petition was no ground for reversing the judgment, no motion to vacate the receivership having been made, and it appearing that the property placed in the hands of a receiver

was subject to the lien asserted by the plaintiff and was applied by the court to its satisfaction. It is a further familiar rule of equity practice that in cases of urgent necessity therefor, a receiver may be appointed without prior notice of application. Cotton v. Rand, 92 S. W. 266.

The appointment of a receiver in Wm. H. Young against the dissolved city of Colorado was an ancillary proceeding only. The real causes of action asserted were the debts alleged by the plaintiffs in that case against the dissolved city, which they sought to be established as judgments, and the appointment of a receiver in no manner affected the rights of any of the taxpayers of the dissolved city to file a protest against the claims. Even though it could be said that the application for the appointment of a receiver was a part of the causes of action asserted, then as the statute expressly required prior notice of the hearing of that application, it could not be said that the appointment denied the taxpayers of the dissolved city due process of law, if it be true, as recited in the order of appointment that due notice was given of such hearing.

[17] By article 1082 of Vernon's Sayles' Tex. Civ. Stat., which is one of the sections of the act now under discussion, it is expressly provided that before the receiver shall approve any claim against the dissolved city, notice of the presentation of such claim, including the date and amount of same and for what purpose incurred, together with the location of the residence of the creditor, shall be published in a newspaper, or posted at the courthouse door of the county for four weeks prior to an allowance of the same by the receiver. As shown in the original opinion, this notice was given, and no protest or objection was made to Young's claim. The provision of the statute that, in the absence of some contest, the court should enter a judgment establishing as valid debts against the dissolved city claims presented and approved by the receiver, after publication of such notices, is but a provision for a judgment by default, after ample opportunity given to the parties affected by such judgment to answer the demands asserted by the plaintiff, and cannot be said to be a judgment without due process of law, any more so than article 1936 of Vernon's Sayles' Tex. Civ. St., providing for default judgments after appearance day of court.

As noted already, the statute gives to any taxpayer of the dissolved city the right to have any claim presented against the dissolved city contested, upon the one condition that he give bond for costs of suit. The statute further provides that, in the event such bond is filed by a taxpayer, the court shall refuse to approve the claim until it is established by judgment in some court of competent jurisdiction. In the event of such a suit, it is made the duty of the receiver to urge all legal defenses against the claim, ex-

cept the plea of limitation. In ordinary equitable receiverships the receiver alone has the right to defend actions accruing against the defendant company before the appointment of a receiver, and under advice of the court appointing him, to determine the expediency of making a defense against such demands. The right thus given in the statute now under discussion to any taxpayer to force the receiver to defend against the collection of any claim presented against the dissolved city is an extraordinary right, not conferred upon any other person interested in property in other receivership proceedings. The fact that the taxpayer is not given the further right of appeal from a judgment that may be rendered against a receiver upon a claim against which the taxpayer has filed a protest is not a denial of due process of law, since the receiver represents all the taxpayers, and has a right to appeal from such a judgment, and it is his duty to do so, if he has a reasonable basis for such an appeal. See, also, Happy v. Mosher, 48 N. Y. 313.

In Campbell v. Holt, 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483, it was held that a debtor has no vested right in the bar of a statute of limitation, and that the Legislature may constitutionally remove the bar of the statute and thus revive his liability to suit on the previously barred claim. Hence if it could be said that Young's claim was already barred by the statute of limitation at the time the act of 1905 was passed, then the passage of that act removed the bar.

[18] Neither can it be said that the portion of the act that a receiver could not plead the statute of limitation against demands asserted against a dissolved city was a special privilege granted to such creditor and a denial to such a city of equal protection of the law, within the meaning of the constitutional provisions of the state and the United States, prohibiting the enactment of statutes granting special privileges, and denying to any person the equal protection of the law, since the act is applicable to all creditors and debtors of the same class. In the seventh section of the act the reason recited for an emergency requiring the act to take immediate effect was:

"There being no adequate law in force whereby creditors of defunct corporations can collect the just debts due therefrom."

Aside from that recital, the enactment itself indicates that such was the legislative interpretation of the laws then in force, and the fact recited was a reasonable basis for exempting all claims of that class from the operation of the general statutes of limitation without violating the constitutional provisions last mentioned. Supreme Lodge U. B. A. v. Johnson, 98 Tex. 5, 87 S. W. 18; Ins. Co. v. Chowning, 86 Tex. 655, 26 S. W. 982, 24 L. R. A. 504; Campbell v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878; Beaumont Trac. Co. v. State, 57 Tex. Civ. App. 605, 122 S. W. 615; St. L., S. F. & T. R. Co

v. Taylor, 134 S. W. 819; Ins. Co. v. Mettler, 185 U. S. 325, 22 Sup. Ct. 662, 46 L. Ed. 922.

[19] The act of 1905 had been in effect for more than a year prior to the incorporation of the present city of Colorado, and if, as contended by appellee, it denied appellee any right to contest the claims of Young and his coplaintiffs in the former suit, nevertheless appellee is in no position to complain, since that statute became a part of its charter and is binding upon it. House of Mercy v. Davidson, 90 Tex. 529, 39 S. W. 924; Chicago, etc., R. R. Co. v. Zernecke, 183 U. S. 582, 22 Sup. Ct. 229, 46 L. Ed. 339; Corry v. Baltimore, 196 U. S. 466, 25 Sup. Ct. 297, 49 L. Ed. 556.

[20] Furthermore, even if that provision of the statute precluding a plea of limitation is unconstitutional, it would not follow necessarily that all other provisions of the statute are void, since there is nothing to indicate that such other provisions would not have been enacted at all events. On the contrary, we are of opinion that the provision last referred to should be considered as an incident only to the main purposes of the act, to wit, to give creditors of dissolved cities a remedy for the collection of their debts. Sutherland on Statutory Construction, § 170.

Appellee insists that:

"The relator himself pleaded that: (1) The creditors gave the only notice attempted to be given of the intention to apply for the receiver; (2) that the notice, instead of stating when and before whom the application would be heard, recited that on a certain day, or as soon thereafter as could be heard, the petitioners would apply for the appointing of a receiver; and (3) that this day named was June 30, 1906."

While a copy of the order dated January 4, 1908, was attached to the plaintiff's petition as an exhibit, and which order contained a copy of the notices posted by the plaintiffs in that suit, yet we do not construe plaintiff's petition in this suit as committing him to the proposition that that was the only notice given prior to the appointment of the receiver.

[21] In appellee's motion for rehearing the following occurs:

"Right here we wish to call attention to the misapprehension of this court that the bonds in suit are not claimed by the appellee to be an invalid debt. The claim that the whole indebtedness was, and is yet, an invalid debt was vigorously made by the appellee, both in the trial court and here. On January 4, 1907, the principal and interest on these bonds had been past due for 13 years 3 months and 3 days. When this mandamus was filed, the principal and interest had been past due for 19 years 8 months and 17 days. They never did represent any obligations of the city, and were issued by an absolutely void municipal corporation."

Presumably this criticism is addressed to the following statement contained in our original opinion:

"There is no claim by the appellee that the bonds held by the plaintiff Young were not a valid debt against the city which issued them."

Appellee's pleadings in the trial court, and its brief filed here, presented the contention shown in the language quoted above, but we did not interpret the same as a claim that the bonds were invalid as against the city which issued them and which received the money paid to the city therefor, especially in view of the familiar rule that a de facto municipal corporation cannot urge the invalidity of its incorporation as a defense in a suit to collect a debt which it has contracted. 1 McQuillin's Municipal Corporations, § 2354.

The motion for rehearing is overruled.